THOMAS MAYES

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 29, 1883.*

</div>

1. INDICTMENT FOR MURDER—*whether sufficient.* A count in an indictment for murder alleged that the defendant, with a glass which he in his right hand held, in and upon M. feloniously did make an assault, and with such glass to and against M. did cast and throw and strike, and with such glass defendant a certain lamp, with oil and wick therein, which M. held in her hand, then and there lighted and burning, did break and destroy, and by means of such breaking of the lamp so held by M., and being so lighted and burning, the oil of said lamp was spread and poured upon the said M., and by reason thereof the clothing and garments of the said M. were fired and

burned on her person, and by reason of such burning the body, face, neck, head and limbs of said M. were greatly burned, and thereby she received five mortal burns upon the neck, face, body, head and limbs, by reason of the said casting, throwing and striking with the said glass by the defendant, and the breaking of said lamp so containing oil, and being lighted, as aforesaid, from which mortal burns said M. did die: *Held,* that the count was substantially good, and there was no error in refusing to quash the same. It was not essential to aver specifically "that the oil was fired by the flame of the wick of the lamp, then filled with oil and burning, and held by the deceased in her hand," in order to show the cause of death. The words "by reason thereof," as used by the pleader, refer as well to the preceding words "lighted and burning," as to the words "spread and poured upon the said Kate Mayes."

2. MURDER—*of the intent—what necessary to constitute the crime.* Where an act, unlawful in itself, is done with deliberation, and with intention of mischief or great bodily harm to some particular person, or of mischief indiscriminately, fall where it may, and death ensues from such act, against or beside the original intention of the party, it will be murder.

3. So in this case, where the defendant, in an angry and excited state of mind, threw a beer glass at his wife, which struck a lamp she was carrying, breaking the same and causing the oil therein to take fire and burn her, from which burns she died, it was held immaterial whether he intended the glass should strike his wife, or his mother-in-law, or his daughter, who were also in the same room, or whether he had any specific intent, but acted from general malicious recklessness, disregarding any and all consequences,—in either case he was guilty of murder.

4. When the act is in itself lawful, or even if unlawful is not dangerous in its character, and death ensues to another from such act, without any intent to injure the person killed, a different rule obtains. But when the act is unlawful, and manifests a reckless, murderous disposition on the part of the person charged, or, in the words of the old law book, "A heart void of social duty, and fatally bent on mischief," the presumption of law is that the mind assented to what the hand did, with all the consequences resulting therefrom.

5. ONE GOOD COUNT—*will sustain general conviction.* If any one count of an indictment be good, it will sustain a general verdict of guilty.

6. PRACTICE—*improper remarks of State's attorney must be objected to and preserved in bill of exceptions.* If one on trial for a criminal offence desires to assign for error in this court unwarranted statements of fact made by the State's attorney in his closing argument, he should call the matter to the attention of the court at the time, and embody the objectionable statement in the bill of exceptions, otherwise this court can not consider the assignment of error. It is not sufficient to embody such statement in the defendant's affidavit filed in support of a motion for a new trial.

WRIT OF ERROR to the Circuit ·Court of Jersey county; the Hon. ALBERT G. BURR, Judge, presiding.

Mr. W. H. POGUE, for the plaintiff in error.

Mr. JAMES McCARTNEY, Attorney General, for the People.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Plaintiff in·error, by the judgment of the court below, was convicted of the crime of murder, and sentenced to the penitentiary for the term of his natural life. The several objections urged against that conviction will be passed upon in the order of their presentation by counsel for plaintiff in error.

*First*—It is contended the court erred in refusing to sustain the motion to quash the indictment. The indictment contains three counts, but inasmuch as if any one be good it will sustain the general verdict of guilty, (*Curtis* v. *The People,* Breese, 256, *Lyons* v. *The People,* 68 Ill. 271, *Sahlinger* v. *The People,* 102 id. 241,) we deem it only necessary to particularly notice the third, which we think is clearly good. It is as follows:

"And the grand jurors do further present, that the defendant, with a certain glass which he, the said Thomas Mayes, in his right hand held, in and upon the said Kate Mayes feloniously, etc., did make an assault, and with the glass aforesaid to and against the said Kate Mayes did cast and throw and strike, and. with the said glass so held and thrown, he, the said Thomas Mayes, a certain lamp, with oil and wick therein, which she held in her hand, then and there lighted and burning, did break and destroy, and by means of such breaking of such lamp so held by said Kate Mayes, and being so lighted and burning as aforesaid, the oil of said lamp was spread and poured upon the said Kate Mayes, and by reason thereof the clothing and garments of the said Kate Mayes were fired and burned on the person of the said Kate Mayes,

and by reason of such burning the body, face, neck, head and limbs of the said Kate Mayes were greatly burned, and thereby then and there she, the said Kate Mayes, received five mortal burns upon the neck, face, body, head and limbs of her, the said Kate Mayes, by reason of the said casting, throwing and striking with the said glass by him, the said Thomas Mayes, as aforesaid, and the breaking of said lamp so containing oil, and being lighted as aforesaid, and of which said mortal burns the said Kate Mayes languishing, did die," etc.

The objection taken to this count is, that it should have been specifically averred "that the oil was fired by the flame of the wick of the lamp, then filled with oil and burning, and held by the deceased in her hand." This would, doubtless, have been more lucid, and, therefore, preferable; still, we are of opinion such averment was not indispensable. We can not concur with counsel that the words "by reason thereof," refer only to the preceding words, "spread and poured upon the said Kate Mayes," and do not refer to the words "lighted and burning." We think the plain, ordinary meaning of the language is, plaintiff in error threw a glass at and against Kate Mayes, and thereby broke a lamp having oil and wick therein, which were then lighted and burning, which she held in her hand, and by means of such breaking of said lamp the oil of said lamp, which was lighted and burning, was spread and poured upon the said Kate Mayes, "and by reason thereof,"—*i. e.*, by reason of the spreading and pouring of the lighted and burning oil upon the said Kate Mayes,—"her clothing and garments and person were fired and burned." When it is said a lamp, with oil and wick therein, lighted and burning, is broken, and by means of the "breaking of said lamp so lighted and burning as aforesaid, the oil of said lamp was spread and poured," etc., it would seem impossible to understand that the oil was not lighted and burning, and that "the oil of such lamp does not mean the oil which is lighted and burning." It is not the wick of

the lamp alone, but the oil of the lamp, together with the wick, as a unit, that is said to be "lighted and burning," and necessarily, therefore, when it is repeated that the oil was "spread and poured," etc., it must mean the lighted and burning oil was spread and poured, etc. The objection is hypercritical, and the motion to quash was properly overruled.

*Second*—It is contended the facts proved do not constitute murder. They are, briefly, these: The deceased was the wife of plaintiff in error, and came to her death by burning, resulting from plaintiff in error throwing a beer glass against a lighted oil lamp which she was carrying, and thereby breaking the lamp and scattering the burning oil over her person. Plaintiff in error came into the room where his wife, his mother-in-law and his young daughter were seated around a table engaged in domestic labors, about nine o'clock at night. He had been at a saloon near by, and was, to some extent, intoxicated,—not, however, to the degree of unconsciousness, for he testifies to a consciousness and recollection of all that occurred. When he sat down, the deceased, noticing that one side of his face was dirty, asked him if he had fallen down. He replied that it was none of her business. She then directed the daughter to procure water for him with which to wash his face, which being done, he washed his face, and he then directed the daughter to procure him a clean beer glass, which she did. He had brought some beer with him from the saloon, and he then proceeded to fill the glass with the beer and handed it to the deceased. She took a sup of it, and then offered it to her mother, who declined tasting it. The deceased then brought plaintiff in error his supper, but he declined eating it, and was about to throw a loaf of bread at the deceased when she took it from his hands and returned it to the cupboard. After this, having sat quietly for a few minutes, he asked for arsenic. No reply was made to this request, and thereupon he commenced cursing, and concluded by saying that he would either kill

deceased or she should kill him. He wanted a fire made, but deceased told him it was bed time and they did not need any fire. He then picked up a tin quart measure and threw it at the daughter. Thereupon deceased started, with an oil lamp in her hand, toward a bed-room door, directing the daughter to go to bed, and as the deceased and daughter were advancing toward the bed-room door, he picked up the beer glass, which is described as being a large beer glass, with a handle on one side, and threw it with violence at the deceased. It struck the lamp in her hand and broke it, scattering the burning oil over her person and igniting her clothes. Plaintiff in error made no effort to extinguish the flames, but seems to have caught hold of the deceased, temporarily, by her arms. This occurred on Monday night, and on Saturday of that week she died of the wounds caused by this burning.

The plaintiff in error claims that he was only intending to pitch the beer glass out of doors—that he did not design hitting the deceased, and that the striking of the lamp was therefore purely an accident. In this he is positively contradicted by his daughter and mother-in-law, the only witnesses of the tragedy besides himself. He says, to give plausibility to his story, that the door leading into the yard was open, and that deceased and daughter had to pass between him and that door in going to the bed-room, and that deceased was near the edge of the door and moving across the door when he pitched the glass. They both say this door was closed, and that he *threw* the glass. The language of his mother-in-law, in regard to the throwing, is: "He threw at her with vengeance a heavy tumbler;" and his daughter's language is: " He picked up a tumbler and threw it with such force that it struck the lamp." We can not say the jury erred in believing the mother-in-law and daughter, and disbelieving plaintiff in error.

*Third*—The plaintiff in error asked the court to instruct the jury, "that to constitute a murder there is required an union of act and intent, and the jury must believe, beyond a reasonable doubt, both that the weapon used was thrown with the intent to inflict bodily injury upon the person of Kate Mayes, and if they have a reasonable doubt as to whether his intent was to strike his wife or not, the jury should give the prisoner the benefit of such doubt, and acquit him." The court refused to give this as asked, but modified it by adding: "Unless the jury further believe,.from the evidence, beyond a reasonable doubt, that all the circumstances of the killing of Kate Mayes, (if the evidence shows that she was killed by defendant,) shows an abandoned and malignant heart on the part of the defendant," and then gave it. Plaintiff in error then also asked the court to instruct the jury as follows:

"The court instructs the jury, for the defendant, that intention to commit a crime is one of the especial ingredients of an offence, and the People are bound to show, beyond a reasonable doubt, that the defendant threw the glass in question at the deceased with the intention to do her bodily injury, and if you believe, from the evidence, that there is a reasonable doubt as to the defendant having thrown said glass with intent to do her bodily injury, the jury will give the defendant the benefit of said doubt, and acquit the defendant."

This, also, the court refused to give as asked, but modified it by adding: "Unless all the circumstances of the killing of Mrs. Mayes (if she is shown, beyond a reasonable doubt, to have been killed by defendant,) show an abandoned and malignant heart on the part of the defendant," and then gave it. Exceptions were taken to the rulings in these modifications, so the question whether they were erroneous is properly before us.

We perceive no objection to these rulings. Malice is an indispensable element to the crime of murder. But our statute, repeating the common law rule, says: "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." (Rev. Stat. 1874, p. 374, sec. 140.) And hence it is said: "When an action, unlawful in itself, is done with deliberation, and with intention of mischief or great bodily harm to particulars, or of mischief indiscriminately, fall where it may, and death ensue, against or beside the original intention of the party, it will be murder." (Wharton on Homicide, 45.) And as illustrative of the principle, the author says: "Thus, if a person, breaking in an unruly horse, willfully ride him among a crowd of persons, the probable danger being great and apparent, and death ensue from the viciousness of the animal, it is murder. * * * So, if a man mischievously throw from a roof into a crowded street, where passengers are constantly passing and repassing, a heavy piece of timber, calculated to produce death on such as it might fall, and death ensue, the offence is murder at common law. And upon the same principle, if a man, knowing that people are passing along the street, throw a stone likely to do injury, or shoot over a house or wall with intent to do hurt to people, and one is thereby slain, it is murder on account of previous malice, though not directed against any particular individual. It is no excuse that the party was bent upon mischief generally." To like effect is, also, 1 Russell on Crimes, (7th Am. ed.) 540, *541; 1 Wharton on Crim. Law, (7th ed.) sec. 712 b. So, here, it was utterly immaterial whether plaintiff in error intended the glass should strike his wife, his mother-in-law, or his child, or whether he had any specific intent, but acted solely from general malicious recklessness, disregarding any and all consequences. It is sufficient that he manifested a reckless, murderous disposition,—in the language of the old

books, "A heart void of social duty, and fatally bent on mis-
chief." A strong man who will violently throw a tin quart
measure at his daughter—a tender child—or a heavy beer
glass in a direction that he must know will probably cause
it to hit his wife, sufficiently manifests malice in general to
render his act murderous when death is the consequence of it.
He may have intended some other result, but he is responsi-
ble for the actual result. Where the act is, in itself, lawful,
or, even if unlawful, not dangerous in its character, the rule
is different. In cases like the present, the presumption is
the mind assented to what the hand did, with all the conse-
quences resulting therefrom, because it is apparent he was
willing that any result might be produced, at whatever of
harm to others. In the other case, the result is accidental,
and, therefore, not presumed to have been within the con-
templation of the party, and so not to have received the
assent of his mind.

*Fourth*—The last objection to be noticed is, that the State's
attorney, in his closing argument to the jury, made certain
unwarranted statements of fact. This is not shown by proper
recital in the bill of exceptions, as it should be if it is to be
considered by us, but appears only in an *ex parte* affidavit
of the prisoner, made and presented in support of the motion
for a new trial. If the fact occurred, it is to be presumed
the judge knew it, and there was no need of an affidavit to
bring it to his attention. It is not even shown by the bill of
exceptions that the attention of the judge was called to the
subject upon the trial, or that the judge had forgotten or did
not know what then occurred, and, after the trial, was asked
to hear evidence as to what did actually occur upon the trial.
The *ex parte* affidavit of a defendant can not thus be made to
override the recitals of the bill of exceptions as to what oc-
curred upon the trial of a criminal cause. For aught that
here appears, the judge may have disregarded this affidavit
because he knew it to be untrue. But, in addition to this,

it does not appear, even by the affidavit, that the judge's attention was called to this conduct of the State's attorney; and we have held that if a party sits silently by and permits such conduct to pass unchallenged, he can not be allowed to assign it for error. *Earll* v. *The People,* 99 Ill. 123.

Perceiving no cause to disturb the judgment, it is affirmed.

*Judgment affirmed.*