### Rock Island & Peoria Ry. Co. v. Andrew R. Kepple.

1. Practice—*What Occurs in the Trial Court Must be Contained in the Bill of Exceptions in Order to be Made a Part of the Record.*—What is done by the judge or what occurs in his presence is within his knowledge and must be recited over his certificate, and can not be made a part of the record by *ex parte* affidavits.

2. Same—*Judge in Preparing Bill of Exceptions May Ignore Affidavits he Knows to be False.*—A judge in preparing a bill of exceptions may order affidavits stricken from the files, the material allegations of which he knows to be false.

3. Railroads—*Duty to Maintain Crossings at Public Highways.*—It is the duty of a railroad to maintain crossings and approaches at public highways safe to person and property.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Rock Island County; the Hon. Hiram Bigelow, Judge, presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

Jackson, Hurst & Stafford, attorneys for appellant; Robert Mather, of counsel.

T. J. & S. R. Kenworthy, attorneys for appellee.

Mr. Presiding Justice Brown delivered the opinion of the court.

This was an action on the case to recover damages for personal injuries. The trial resulted in a verdict and judgment in favor of the plaintiff for $3,000. The court after overruling a motion for a new trial entered judgment upon the verdict and the defendant appealed.

The declaration contains two counts which allege, in substance, that on the 27th day of May, 1901, the defendant was operating a railroad through the village of Coal Valley in Rock Island county; that the railroad crossed Graham

street, a public highway in said village; that it was the duty of the defendant to construct and maintain a railroad crossing and approaches at said street intersection, so as to be safe to persons and property; that the defendant failed so to do, but allowed the crossing to be in an unsafe and dangerous condition and allowed certain chuck-holes to form to the depth of twelve inches; that because of the existence of the chuck-holes, the plaintiff, while in the exercise of due care and diligence in passing over said crossing in a wagon, the wheels of which dropped into the holes, was thrown from the wagon upon the ground and seriously injured. The *ad damnum* was $10,000. The gravamen of the charge was the failure of the defendant to discharge its statutory duty to maintain safe crossings at public highways.

The railroad runs east and west, and the highway north and south. The plaintiff was driving north with a team and a loaded wagon. His feet were against the front end-board. There were two tracks at the crossing, a main track and north of it a switch-track. The defendant had, for some time, been raising its main track in that locality by hauling car loads of dirt and pounding it under the ties. In this manner the main track was elevated above the grade of the switch-track. They were about twelve feet from each other. Plaintiff's proof showed that as he drove north over the crossing he had to drive up over the ends of the ties to get onto the crossing and that as he passed over the north rail of the main track there was a sudden drop which threw him over the front of the wagon and down upon the ground between the horses. One of his limbs was broken, he was otherwise seriously injured and became unconscious. The horses ran a short distance and were stopped. The defendant claims there was no such drop or hole, and that the tongue of plaintiff's wagon dropped out of the neck-yoke, causing the movement of the wagon which threw the plaintiff to the ground and caused his injuries. The tongue did drop down, but whether before or after the plaintiff received his injuries is one of the controverted questions of fact. Defendant's principal contention is that the evidence does not support the verdict. The con-

tention is that the preponderance of the evidence is with the defendant; that the verdict is the product of passion and prejudice. We are of the opinion that there was an abundance of evidence to support the conclusion that the track had been raised, that there was a sharp drop after passing over the main track going north, and that the front wheels of plaintiff's wagon dropped into the depression or hole, thus causing his injuries.

The evidence justifies the finding that the defendant did not discharge its duty to maintain a crossing safe to persons and property. We would not be justified in disturbing the conclusions of the jury, approved by the trial judge.

It is contended the damages are excessive. Taking into consideration the pain and suffering endured by the plaintiff, the permanent effects of his injury, the length of time he was unable to use his broken limb, the expense of care and nursing as well as the cost of medical attendance, we can not say that the verdict was excessive.

It is urged that the trial judge used improper and prejudicial language in the presence of the jury concerning a photograph when first offered in evidence by the defendant. All that the bill of exceptions shows upon the subject at the time of the offer, is that the defendant offered it in evidence, the plaintiff objected, and the court said: "I don't think it is admissible under the evidence as yet developed." The foregoing is all that the judge certified that occurred, or was said by him upon the subject. Manifestly there was no impropriety in the language of the court. On the motion for a new trial one of the defendant's attorneys filed an affidavit which stated that at said time and in said connection the judge made other statements and that it is these which are alleged to be erroneous. Two of plaintiff's attorneys filed counter affidavits stating that according to their recollection the judge did not use the objectionable language imputed to him. We can not consider the affidavits. For the purpose of determining what language the judge used during the trial we must look solely to the recitals of the bill of exceptions.

In Peyton v. Village of Morgan Park, 172 Ill. 107, the court says :

"The last ground of complaint relates to the action of the judge in an endeavor to ascertain whether the jury had agreed or was likely to agree. This action was attempted to be shown by affidavits filed on the motion for a new trial. Such matters can not be shown in that way, but can only be made a part of the record by a proper recital in the bill of exceptions. What is done by the judge or what occurs in his presence is within his knowledge and must be recited over his certificate, and can not be made a part of the record by *ex parte* affidavits. (Mayes v. People, 106 Ill. 306; Scott v. People, 141 Id. 195.) It would be just as proper to show the rulings and holdings of the court in the course of a trial, and what instructions were given or refused, by affidavits, as to show in that way what was attempted here. It is said in Mayes v. People, *supra*, that such an affidavit can not be made to override the bill of exceptions, and that a judge may disregard it because he knows it to be false. In this case the bill of exceptions recites that the court ordered the affidavits stricken from the files because all the material averments therein contained were false, to the personal knowledge of the judge. According to the bill of exceptions, which was the only record, there was no improper action on the part of the judge."

To the same effect are Dreyer v. The People, 188 Ill. 62, and City of Elgin v. Nofs, 103 Ill. App. 11. Moreover there was no exception preserved to the alleged improper remarks of the judge.

There is no reversible error in the record. The verdict was warranted by the evidence. The judgment of the Circuit Court will be affirmed.