## Warren Winslow v. William H. Guthrie.

### Gen. No. 4,303.

1. BILL OF EXCEPTIONS—*how, may not be impeached.* A bill of exceptions upon appeal is absolutely presumed to speak the truth and its certifications cannot be impeached by statements of counsel contained in their briefs.

2. INSTRUCTION—*when, properly refused.* Where counsel in a cause state in open court that there is but one issue to be determined, it is proper for the court to refuse an instruction offered by such counsel upon some other issue than that referred to in his statement.

Action of assumpsit. Appeal from the County Court of DuPage County; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

H. T. WILCOXON, for appellant.

JETT & KINDER, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

Warren Winslow, plaintiff below and appellant here, procured a judgment by confession, in the County Court of DuPage county, in vacation, against defendant, William H. Guthrie, upon a promissory note for $100 dated September 3, 1900, payable to the order of H. Janss six months after date, and containing the usual power of attorney authoriz-

ing a judgment by confession. An execution was issued upon said judgment and served on defendant, who resided in Montgomery county, and who thereupon procured an order from the county judge of DuPage county, staying further proceedings upon the judgment until a motion to vacate it could be heard. Upon the hearing of the motion the court vacated the judgment and permitted defendant to plead to the merits of the cause. Defendant pleaded the general issue, and also a special plea, alleging that the consideration for the note was the treatment and cure by the payee within six months, of defendant's son, who was afflicted with sciatic rheumatism, and that no sum whatever was to be paid on the note unless defendant's son was cured within said six months; that his son had not been cured or benefited by the treatment; that the consideration for the note had wholly failed, and that the note had been assigned to the plaintiff after it became due. Issue was joined on these pleas and trial had by jury, resulting in a verdict for the defendant, upon which the court rendered judgment and plaintiff appeals.

H. Janss, the payee in the note, appears to have been doing business in Chicago under the name of the " Illinois State Medical and Surgical Institute," or some similar name. The note was procured of defendant by a man representing himself to be Dr. Nelson, who called at defendant's house in Montgomery county and solicited him to take treatment from Dr. Janss for his son. The evidence is uncontradicted that the treatment neither cured nor benefited defendant's son, which the representative of the payee gave defendant a written guaranty it would do at the time he secured the note.

When the trial came on, defendant verified his pleas by affidavit; whereupon plaintiff's counsel stated he would have to apply for a continuance as that would require him to prove the execution of the note. To avoid a continuance, it was agreed by counsel in open court, before the court and jury, that the signature to the note was the genuine signature of defendant and that at the time he signed

the note, there were ·blanks where the words and figures
"I," "me" and "20" now appear written in the power of
attorney to said note. Plaintiff introduced the note in
evidence and rested; whereupon defendant introduced proof
of what the consideration for the note was and that it had
failed, and read the depositions taken on his motion, of the
plaintiff, his attorney, Mr. Wilcoxon, and Frank Lindley,
for the purpose of showing that plaintiff was not a *bona
fide* purchaser of the note before maturity. At the conclu-
sion of the evidence, defendant's counsel claimed the right
to open and close the argument, which was allowed, and
this appears to have beeen treated by both sides as a with-
drawal of the general issue. It appears from the bill of
exceptions, that plaintiff's counsel stated to the jury " that
the only question left in the case, was, whether Winslow
purchased the note for value before maturity," and from an
examination of the evidence this appears to us to have been
a correct statement. Plaintiff testified in his deposition
taken by defendant, that he bought the note in November
or December, 1900. We have read his deposition from the
record, and are not favorably impressed with it. The wit-
ness' memory was not very clear except as to the propo-
sition that he bought the note before maturity from Dr.
Janss. He is unable to state just when he bought it, or
how much he paid for it, or to give any of the circumstances
in connection with its purchase. As a reason for this, he
states that he had bought so many notes from the same
party. He testifies that he cannot say whether he owned the
note in January, February or March of 1901; that he sent
the note by Dr. Hopkins, who was associated with Dr. Janss,
to his attorney, Mr. Wilcoxon, for collection but cannot say
that he never sold the note at any time through Dr. Hopkins
or Mr. Wilcoxon; says he may have sold it to the witness
Lindley, but that he owned it at the time suit was brought.
He further testifies that he cannot say whether the note was
bought from Frank Lindley by some one for him; that he
had a record of his notes but it was kept by the same Dr.
Hopkins, whose whereabouts witness said he then did not

know, but thought he was somewhere in Indiana, either Attica or West Baden. He further states that through Dr. Hopkins he first put the note in the hands of the Metropolitan Loan & Collection Agency of Chicago for collection; that he did not know who composed this collection agency or where its office was; that he was referred to the agency by Dr. Hopkins and did not know whether the doctor was interested in it or not; that Dr. Hopkins had no office in the city that he knew of, but when he wanted to see him, he would inquire at the office of the Illinois State Medical & Surgical Institute, which was Dr. Janss' office. Mr. Wilcoxon, plaintiff's attorney, in his deposition states that he only knew of the Metropolitan Loan & Collection Agency through Dr. Hopkins; that he did not know where their office was, but at present the mail for this agency was received at his office and called for by Dr. Hopkins who was with the Medical & Surgical Institute, and who brought him the note for collection.

The note at the time of the trial bore the indorsement "Pay Frank Lindley, without recourse. H. Janss." The words "Pay Frank Lindley" had been erased by drawing a pen through them. Lindley was an attorney at law at Danville, Illinois, and his deposition was read on behalf of defendant at the trial. He testified that he knew Winslow, the plaintiff, some few years before,.and that he was connected with a Dr. McGee, soliciting patronage for his surgical institute in Chicago. He says the note was delivered to him by a man named Nelson, with a blank indorsement, and that Nelson was connected with the Chicago Medical & Surgical Institute as a solicitor of patronage when he first knew him, but could not say what his business was at the time he received the note from him. He says he received the note in August, 1901, to secure him on a note he had purchased from Nelson previously, payable to H. Janss, and indorsed in blank without recourse, signed by a man named Olive, who refused to pay the note and claimed he had a defense to it. He further testifies that Nelson claimed to represent the Illinois State Medical &

Surgical Institute. In this connection it is worthy of note that Nelson was the name of the man who made the contract with defendant and secured the note sued on. These statements and circumstances, together with much more that we might set out if deemed necessary or desirable, lead us to conclude the jury was warranted in finding from the evidence that plaintiff was not a *bona fide* purchaser for value before maturity of the note.

Complaint is made of the refusal of the court to give on behalf of plaintiff instructions numbered 8, 10, 11 and 13. Number 8 was based upon certain remarks made by the court during the trial, which are alleged to have prejudiced plaintiff's case. The bill of exceptions shows that during the closing argument of defendant's counsel, he called attention of the jury to the words and figures "I," "me" and "20," written in the power of attorney to the note, and said: "It is hard to tell what these Chicago men will do; they might as well have put in fifty dollars as twenty dollars." To which plaintiff's counsel replied, he thought the payee had authority to fill these blanks, and that doing so would not affect an innocent purchaser for value before maturity. Whereupon the court remarked, but not within the hearing of the jury, "I have a serious doubt as to whether or not the filling in of those blanks did not entirely nullify or destroy the note," or words to that effect. Counsel claims the instruction was intended to nullify those remarks. It, in effect, told the jury not to be influenced by anything the court had said during the trial, but that they should look solely to the evidence for the facts and to the instructions for the law in arriving at their verdict. As before stated, the bill of exceptions shows that these remarks were not made within the hearing of the jury, hence there could be no error in refusing the instruction. The bill of exceptions, as prepared by counsel for plaintiff, and presented to the judge for his signature, did not contain the statement that these remarks were not made within the hearing of the jury, but this statement was inserted by the trial judge before signing it. His action in this regard is criticised,

and it is argued, at least inferentially, that this statement is incorrect, and the right of the judge to so certify is challenged. It surely needs the citation of no authority to prove that it was not only within the power, but the duty of the trial judge, to make the bill of exceptions speak the truth, and no other party can· determine this for him. If counsel were of opinion the remarks were heard by the jury, but the court was of a different opinion, it was the duty of the court to certify the facts as he understood them, and he would not be justified in accepting the statements of counsel about matters when the facts were known to him personally. Indeed, matters occurring within the presence and knowledge of the judge, can only be made to appear by his certificate. "What is done by the judge or what occurs in his presence, is within his knowledge, and must be recited over his certificate, and cannot be made a part of the record by *ex parte* affidavits." Peyton v. Village of Morgan Park, 172 Ill. 102; Mayes v. People, 106 Ill. 306; Dryer v. People, 188 Ill. 60. Unless we would be justified in accepting the statements of counsel in his brief against a solemn recital in the bill of exceptions, we must hold that no error was committed by the court in refusing this instruction.

Instructions 10 and 11 related to the right of the plaintiff to fill the blanks in the power of attorney in the note with the words "I," "me" and "20." In our opinion, as the case finally went to the jury, these instructions were not applicable to any issue involved. Evidence upon this question could only have been proper under the plea of the general issue, and when that plea was withdrawn and the jury informed by plaintiff's counsel that the only question in the case was whether Winslow, the plaintiff, purchased the note for value before maturity, the supposed change or alteration of the note was no longer a question in the case, and it was not error for the court to refuse the instructions. Instruction number thirteen was on the proposition that if plaintiff was a purchaser for value before maturity, before recovery could be defeated, it

must be shown that he had notice at the time of his pur-
chase of defendant's defense to the note. Appellant's
counsel having, as before stated, admitted that the only
question to be determined, was whether the note was pur-
chased before maturity for value, the instruction was
properly refused. We have examined the two instructions
given for defendant, and find no error in them. Seven in-
structions were given on behalf of plaintiff and fully cover
every proposition he had a right to have the jury instructed
upon.

Finding no error in the record the judgment is affirmed.

*Affirmed.*