**Kenneth W. Pinkstaff, Appellant, v. The Pennsylvania Railroad Company, Appellee.**

Gen. No. 47,632.

First District, Third Division.
December 9, 1959.
Released for publication January 29, 1960.

507–1

507-2

James A. Dooley, of Chicago, for plaintiff-appellant.

Robert H. Bierma, A. L. Foster, and Kirkland, Ellis, Hodson, Chaffetz, and Masters, all of Chicago (Max E. Wildman and Frederick W. Temple, of counsel) for defendant-appellee.

JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sued under the Federal Employers' Liability Act and the Federal Safety Appliance Act to recover damages for personal injuries sustained by him while employed as brakeman for defendant, the Pennsylvania Railroad Company. Trial by jury resulted in a verdict and judgment in his favor for $50,000. His motion for a new trial was denied, and he appeals.

It appears that on March 29, 1955, at about twelve-thirty in the afternoon, defendant's switching crew was bringing into coal mine No. 32 of the Maumee Coal Company at Linton, Indiana, from mine No. 23, a distance of four to five miles, twenty-six empty hopper cars, each approximately forty-five feet long and fifteen feet high. These cars were being shoved with the locomotive and the cab car at the rear. Three tracks, numbered 1, 2, and 3, converged about five car-lengths south of the tipple so that only one track actually was used for loading coal. At the south end of the track is a clay embankment, approximately four feet high. On the day in question, tracks No. 1 and 2 were clear, and there were nine cars at the end of the No. 3 track. The elevation or upgrade of the tracks is

south of the tipple; thus the empty cars are allowed to roll, one at a time, downhill (north) to the tipple, to be loaded. Plaintiff was a rear brakeman, working with Engineer Fulk, Fireman Smith, Head Brakeman Waggoner, and Edwards, a conductor. Motions of the locomotive were initiated by hand signals transmitted by members of the crew. Inasmuch as they were shoving cars with the locomotive at the rear, plaintiff was riding on the top of the end car—the one most distant from the engine—so that he could see and relay the signals controlling the movement of the train. On this particular day, Edwards threw the switch at the north end of the No. 1 track so that the cut of cars could enter. The engineer was then given a "back-up" signal. There is evidence that Waggoner was out of position at the time of this movement. The engineer stated that it was customary for the head brakeman to be stationed on the fireman's side; that Waggoner got off the cut at the tipple and went to the east side of the cut, the same side the engineer was on; and that he received no signals from either the fireman or Waggoner.

When the car on which he was riding was about ten car-lengths from the end of the track, plaintiff gave a "steady" signal which was intended to prepare the engineer to stop. At that time plaintiff's head and shoulders were above the top of the car. There was no response insofar as the forward movement of the car was concerned; it continued to proceed at five or six miles per hour. When his car was about eight car-lengths from the end of the track he gave a stop signal with his hands, but there was no substantial decrease in the forward movement of the train. Plaintiff realized that the other trainmen were not relaying his signals to the engine crew. He then went down the ladder on the end car and, while holding onto it at the base with one hand, "hit the air," i.e., he opened the

507–4

angle cock. The angle cock is at the end of the car between the drawbar and the front wheels and has a lever about one inch wide and six inches long. Opening the angle cock causes air to be released simultaneously on each of the cars, including the engine; the operation is designed to slow down or stop the train. When plaintiff opened the angle cock, the last car was about three car-lengths from the embankment at the end of the track. He stated that, in his opinion as an experienced railroad man, with twenty-six hopper cars in the cut moving about five miles per hour, when the angle cock is opened on the end car, the train should stop within fifty to sixty feet. This cut did not stop. Plaintiff attempted to get off after setting the angle cock, but as the train continued on, it struck the embankment, partially breaking through it and crushing him between the car and the embankment. Plaintiff charged in count II of the amended complaint that the air brakes failed to function efficiently, and that such inefficiency constituted a violation of the Federal Safety Appliance Act. Evidence of the gravity of plaintiff's injuries was fully submitted to the jury which, as heretofore stated, awarded him $50,000 as damages. He considers the award inadequate, and contends that it was induced by improper instructions, conduct of defendant's counsel, and erroneous rulings on evidence. Aside from charges that he was "overreached" by "misrepresentation, deceit and perjury," that there was subornation of perjury, perpetration of fraud upon the court and counsel, and that defendant's attorney reneged in a pretrial settlement—charges that will be considered later—the principal ground urged for reversal is that the court erred in instructing the jury. Counsel especially stresses what he considers the error of defendant's instruction No. 17, which reads as follows:

The defendant in this case filed an answer to both counts of the plaintiff's complaint. The defendant denies that it or any of its agents or employees were guilty of any acts of negligence. In answer to Count I the defendant admits that the plaintiff was injured but denies the extent of the injuries claimed.

Furthermore, the defendant states that the plaintiff was not in the exercise of due care and caution for his own safety at the time of and immediately prior to the occurrence and the defendant further states that the plaintiff was careless and negligent in the following respects:

Failed to keep a lookout in the direction in which the train was proceeding;

Failed to use a tail hose as provided and required by the rules in the Bicknell District.

Failed to operate the air brake in time to stop the train before it collided with a dirt embankment.

As to Count II the defendant further denies that it violated the Federal Safety Appliance Act and denies that the air brake in question failed to operate efficiently.

The trial commenced on October 30, 1957, upon Count I, based on the Federal Employers' Liability Act. On November 1, 1957, plaintiff filed an amendment consisting of an additional count based upon violation of the Federal Safety Appliance Act. When instruction No. 17 was given and the case submitted to the jury, the only answer on file was defendant's general denial, and plaintiff contends it was prejudicial error to give the instruction outlining the issues in the case and stating that defendant had filed an answer to both counts of plaintiff's complaint, notwithstanding the fact that no answer was filed to the

507–6

amended complaint until November 13, 1957, more than a week after the trial had been concluded. It is urged by plaintiff that since the instruction was not based on any pleading on file during trial, the judgment should be reversed.

It appears that on November 4, 1957, at the close of all the evidence, a conference was had in chambers, settling the instructions in the case. In the course of that conference, defendant's counsel indicated that he desired to file an amended answer to the amended complaint, as well as an accompanying instruction. The trial judge and the respective counsel apparently desired to bring the case to a close, and in the course of that conference Judge Crowley clearly indicated that defendant would have leave to file an amended answer in conformance with its evidence of contributory negligence adduced upon trial and which was the subject matter of the amended answer to be filed. Defendant's counsel, in the court's presence and that of plaintiff's attorney, dictated the instruction over the telephone to his secretary, and the court later gave it as defendant's instruction No. 17, while also allowing defendant leave to file, within a reasonable time thereafter—twenty or thirty days—its amended answer in conformity therewith. The language of the instruction is substantially identical with the amendment to the answer filed on November 13, 1957. Plaintiff's contention that no order was entered granting leave to amend, was fully argued before the trial judge in connection with his certification of the proceedings. The result of that discussion is reflected in the following certification:

The Court: Let us have one thing at a time. With respect to that the Court knows that the Court did give them leave to file an amended answer on November 4th, the answer to be filed subsequently thereto, and the Court instructing specifically on the answer being set forth to the jury, the contents of the answer. And

the Court will order that the report of proceedings contain a recitation to the effect that the Court granted permission to file an amended answer in accordance with the instruction that was then given, setting forth the defense as claimed by the defendant.

Predicated on this background, plaintiff's contention is that there was no order of court, that the report of proceedings is contrary to the concept that defendant was given leave at that time to file an amended answer; and plaintiff's counsel argues that obtaining leave to amend a pleading is not equivalent to an amendment, and that until the pleading is amended it remains in the same state as though no leave had ever been given. He cites and primarily relies on Wisconsin Central R. Co. v. Wieczorek, 151 Ill. 579, and Landt v. McCullough, 206 Ill. 214. However, both these cases were later discussed and distinguished in Hinchliffe v. Wenig Teaming Co., 274 Ill. 417, wherein the court stated that the rule adopted in most jurisdictions in this country was to the effect that where a motion to amend has been granted but no amended pleading appears in the judgment roll, it may be treated, on appeal, as if actually made. "Counsel for plaintiff in error," said the court, "relies on the rulings of this court in Wisconsin Central R. Co. v. Wieczorek, 151 Ill. 579, Landt v. McCullough, 206 Ill. 214, and like cases, in which objections were made to the introduction of certain evidence on the ground of variance between the allegations and the proof, leave being given to amend but no amendment being actually made. This court held that there was a variance between the allegations and the proof, and the amendment could not be considered as having been made on the record in those cases. There is nothing to show in those cases that the parties proceeded as if the amendment had been actually made, as they did in this case. We do not think the ruling in that class of cases is controlling

507–8

here. The amendment here was actually offered and is in the record. It did not in any way change the character of the proof, either for plaintiff or defendant." In Howard v. Reith, 243 Ill. App. 450, suit was brought before a justice of the peace in the name of one partner to collect a debt alleged to be due to the firm of which he was a member. On appeal to the circuit court, where there was a trial *de novo,* defendant, at the close of plaintiff's evidence, requested a peremptory instruction on the ground that there was a nonjoinder of a necessary party plaintiff. The court granted leave to join the other partner as a coplaintiff and overruled the motion for a directed verdict. Defendant contended that, even if the court had authority to allow the amendment, it was never actually made, and for that reason the judgment in favor of plaintiffs should be reversed. This contention, however, was rejected, the court saying: "Where there is an order granting leave to amend and the subsequent proceedings in the cause are based upon the assumption that the amendment has been made, the course is to consider the order as standing for the amendment itself. Where a motion to amend has been granted but no amended pleading appears in the judgment roll, it may be treated, on appeal, as if actually made. Hinchliffe v. Wenig Teaming Co., 274 Ill. 417–424; Deutsch-Roemisch Katholischer Central Verein v. Lartz, 192 Ill. 485; Ohlendorf v. Bennett, 241 Ill. App. 537."

In the recent case of Pinkerton v. Oak Park Nat. Bank, 16 Ill.App.2d 91, we had occasion to consider the action of the trial court which gave an instruction pertaining to an act of negligence which did not appear in the complaint. The allegation did not materially change the issues and there could have been no confusion thereby. The amended complaint in that case was never amended on its face, nor was any formal

507–9

amendment filed encompassing the words in the court's instructions. In passing on this point, Mr. Justice Bryant, speaking for the court, said: "While it is undoubtedly the general rule that when leave is given to amend a pleading, that does not constitute an amendment [citing the Wisconsin Central R. Co. v. Wieczorek case relied on by plaintiff here], still there are exceptions to that general rule, and it has been generally held that where the parties treat a proposed amendment as having been made, it may be considered by the court as having been made," citing, in support of that conclusion, Sobieski v. City of Chicago, 241 Ill. App. 180, Bildhauer v. Slovenska Narodna Podporna Jednota, 234 Ill. App. 350, and Howard v. Reith, discussed above. We pointed out that defendants in the trial court accepted the amendment and proceeded as if it had been made. Under such circumstances it was logical to hold that the statutory requirements had been met; a pleading may be amended at any time, before or after judgment, to conform it to the proofs, upon terms as to costs and continuance that may be just (Ill. Rev. Stat. 1959, ch. 110, § 46, subpar. 3).

In the case at bar it is clear that the parties and the court treated the amendment as if it had actually been filed, and Judge Crowley, in his post-trial hearing on July 2, 1958, specifically so held. He pointed out that plaintiff himself submitted two instructions (plaintiff's instructions Nos. 11 and 12) on the issue of contributory negligence, saying:

"As to your [plaintiff's] instruction number 12, you not only clearly indicated that you knew and you understood that the issue with reference to contributory negligence as set forth in the contemplated amended answer, because in instruction number 12, it is at your request I instructed the jury with respect to count one, "You are instructed that the burden of proof . . ."

The court continued:

"Mr. Dooley, you knew that there was an instruction setting forth their issue of their answer. You knew that and I will tell you why you knew it, and you knew it because when you amended your instruction you withdrew from your one instruction the question with regard to what was contained in their answer. And you submitted a corrected instruction leaving it to them to set forth what they would claim and set forth in their answer.

"There was no doubt about our contemplation at that particular time. I am satisfied and I am satisfied likewise that you knew what was to be contained therein without any question, because it is clear to me that we all knew that we were going to let the defendant set up his defense and his instruction to make his new issue. It is set forth merely in his allegation.

"That is why there was a correction of the instruction number one, which you supplied by supplying a 1A instruction.

". . . I would never have instructed the jury that he filed an answer to both counts if I didn't treat that thought that I had given him permission to treat it as though on that date it was in the file."

██ Moreover, it appears to be the rule in this State that the report of proceedings, once certified by the trial judge, as to any ruling made by him or proceeding had in his presence, may not be contradicted by affidavits of counsel. Mayes v. People, 106 Ill. 306; Rock Island & P. R. Co. v. Kepple, 106 Ill. App. 303; Dreyer v. People, 188 Ill. 40. Upon the foregoing record, we hold that the court clearly indicated, in the course of the conference on settling the instructions, that defendant should have leave to file an amended answer, that plaintiff must have been fully aware of this circumstance, and that both parties, as well as the court, treated the amendment as if it had actually been filed.

507–11

It is urged, however, aside from the foregoing considerations, that the amendment to defendant's answer did not correctly state or explain the doctrine of contributory negligence which mitigates damages in FELA cases and "was in fact not only meaningless but misleading"; and that defendant's instruction No. 17, based on the amended answer, usurped the province of the jury in that it told them that certain facts constituted negligence. The amended answer set forth "that plaintiff was not in the exercise of due care and caution for his own safety . . . and that the plaintiff was careless and negligent" in certain respects, specifying three particular instances in which he is alleged to have failed in exercising reasonable care and caution. The criticism of the amended answer and instruction No. 17 is that nowhere does it aver that the negligence of plaintiff caused the injury, and counsel argues that unless plaintiff is guilty of negligence which caused the injury it is not to be considered in mitigation of damages, citing several Federal and Illinois cases. It appears that plaintiff had tendered his instruction No. 1 in which the original complaint and answer were summarized. Since the issue of contributory negligence had arisen during the trial and was not covered in the original answer, defendant desired to file its own instruction setting forth its own theory of the case. Plaintiff thereupon withdrew his original instruction No. 1 and substituted his instruction No. 1(a) which deleted several sentences stating defendant's theory of the case; defendant thereupon prepared its instruction No. 17 setting forth its theory of the case. Defendant had the right to such an instruction. It was so held in Sims v. Chicago Transit Authority, 7 Ill.App.2d 21, wherein the court said that "it is elementary that every party has the right to have the law applicable to his case stated fairly, clearly, distinctly and conveyed to the jury with sub-

507–12

stantial accuracy so that it may not be misled to the prejudice of the party." It has also been held that every party has the right to an instruction setting forth its contentions of contributory negligence, and where an instruction is not peremptory it need not state the entire doctrine of contributory negligence. Instruction No. 17 merely states certain contentions of defendant. It does not purport to direct a verdict for either party and therefore need not be complete in itself. Goldberg v. Capitol Freight Lines, 382 Ill. 283; Donnelly v. Pennsylvania R. Co., 342 Ill. App. 556. In the Goldberg case an instruction was criticized because it was said to be peremptory and yet did not require the jury to find that the negligence charged was the proximate cause of the injury; the court held that the instruction was not peremptory but was directed solely to the apportionment of damages between the various defendants and was limited to the elements of negligence and damages as defined in the instruction. "In other instructions," said the court, "the jury was told damages could not be awarded unless the negligence charged was the proximate cause of the injury and that actionable negligence must bear a causal relationship to the resulting damages. When taken together with other instructions and read as one connected series, the instruction was not improper. Chicago City Ry. Co. v. Bundy, 210 Ill. 39; Central R. Co. v. Bannister, 195 Ill. 48." In the instant case, it was not necessary for the court in defendant's instruction No. 17 to charge the jury that the acts complained of caused or contributed to the injury since such matters were fully covered by plaintiff's given instruction No. 11 which reads as follows:

With reference to Count I, the Act of Congress further provides that the fact that the injured employee may have been guilty of contributory negligence, if

507–13

any, does not bar a recovery, but under such circumstances the damages shall be diminished in proportion to the negligence attributable to such employee. You are therefore instructed that if, from the preponderance or greater weight of the evidence in this case, you find that defendant was guilty of one or more of the charges of negligence alleged in plaintiff's complaint, and further find from the preponderance or greater weight of the evidence in this case that plaintiff was guilty of negligently contributing to his injury, then plaintiff's contributory negligence, if any, does not bar him from recovering in this action, but will affect any damages he is entitled to recover, lessening such damages, if any, to the extent that his negligence, if any, contributed to this accident.

■ It is further urged that instruction No. 17, based on the amended answer, usurped the province of the jury in that it told them that certain facts constituted negligence. There is no merit to this contention. The instruction is merely defendant's theory of the case and as such embodies the allegations of its answer and not the court's directions. This appears from plaintiff's instruction No. 2 wherein the court explicitly told the jury that "the complaint filed by the plaintiff in this case and the answer filed by the defendant are the unsworn statements of what the plaintiff and defendant allege, and they neither prove nor tend to prove any allegation contained therein, with relation to this case." There is evidence in the record from which the jury could have found that the accident resulted from:

1) failure to use a tail hose as required by the rules of the Pennsylvania Railroad;
2) failure to keep a proper lookout; and
3) resultant failure to operate the air brake in time to avoid hitting the embankment.

507–14

Plaintiff criticizes three other instructions. It is urged that defendant's instruction No. 18, which reads:

With reference to Count I you are instructed that the defendant is not an insurer of the safety of its employees and the defendant railroad is not liable for injuries, if any, received by the plaintiff unless such injuries, if any, are proved by a preponderance of the evidence to have been proximately caused in whole or in part by the negligence of the defendant,

is misleading in that the introductory phrase, "with reference to Count I," applies only to the clause, "the defendant is not an insurer," and not to the entire sentence. Yet plaintiff himself tendered two instructions, Nos. 11 and 12, which open with the same phrase, and his instruction No. 11 is twice as long as defendant's instruction No. 18. Plaintiff's practice would seem to negative his criticism. It is conceded that the defense of proximate cause has been abolished in FELA actions; however, it does not follow that the instruction is improper, since the terminology adopted is not "proximate cause" but, rather, "proximate cause in whole or in part." Since the instruction contains the statutory language "in whole or in part," the only question is whether the instruction is rendered improper by the additional inclusion of the word "proximate." Both Federal and Illinois authorities, in interpreting the statutory language, have stated that it is enough for liability if the defendant's negligence "contributed in whole or in part" to plaintiff's injuries, or was "in whole or in part" the "proximate cause" of plaintiff's injuries; see Carter v. Atlanta & St. Andrews Bay Ry. Co., 338 U. S. 430; Wantland v. Illinois Cent. R. Co., 237 F.2d 921 (7th Cir.); Dowler v. New York, C. & St. Louis R. Co., 5 Ill.2d 125.

■ Defendant's instruction No. 11(a) reads:

The plaintiff is required to prove his case by the greater weight of the evidence, and if he has not so proved his case, or if the evidence is evenly balanced so that you are unable to say on which side is the greater weight of the evidence, or if the greater weight of the evidence is in favor of the defendant, then in any such event, the plaintiff cannot recover from the defendant.

In support of plaintiff's criticism of this instruction, he cites and relies on three cases from the second and third Appellate Court districts (Hughes v. Medendorp, 294 Ill. App. 424 (3rd Dist. 1938), Healy v. New York Cent. R. Co., 326 Ill. App. 556 (2nd Dist. 1945), and Denny v. Dorr, 333 Ill. App. 581 (2nd Dist. 1948), but does not advise the court that they were later overruled in the districts in which they had been decided; see Alexander v. Sullivan, 334 Ill. App. 42 (3rd Dist. 1948), specifically disavowing the Hughes and Healy cases cited by plaintiff; Ashton v. Sweeney, 350 Ill. App. 135 (2nd Dist. 1953), specifically disavowing the Healy ruling; and Laurent v. Rinehart, 2 Ill.App.2d 410 (2nd Dist. 1954). The Supreme Court of Illinois, in Koshinski v. Illinois Steel Co., 231 Ill. 198, and in North Chicago St. R. Co. v. Fitzgibbons, 180 Ill. 466, approved the law as given in this instruction, and, relying on the Koshinski case and other authorities, we recently approved a similar instruction in Sankey v. Interstate Dispatch, Inc., 339 Ill. App. 420.

■ ■ The last of the instructions criticized is defendant's No. 19 dealing with the credibility of witnesses, in which the jury were told that they have no right to disregard the testimony of an unimpeached witness on the sole ground that such witness is an employee of defendant. Plaintiff argues that by giving this instruction the court deprived the plaintiff of

the right to have the jury take into consideration the interest of the defendant's employee witnesses. The law as stated in this instruction has been expressly approved, both as to substance and language, in Federal and Illinois cases; see Chesapeake & O. Ry. Co. v. Martin, 283 U. S. 209; Roberts v. Chicago City Ry. Co., 262 Ill. 228; Chicago Union Traction Co. v. Mommsen, 107 Ill. App. 353.

Considerable space is devoted in the briefs to a discussion of a device called a tail hose, and rules requiring its use by brakemen. It is a length of hose attached to the angle cock, with a valve at the end, which permits a member of the crew to set the brakes on a train from the side ladder of the car on which he is standing, one or two rungs from the top of the car, without having to climb down the rear ladder to the angle cock, as plaintiff did in this switching operation. Plaintiff argues that the tail hose should not have been received in evidence, and that it was error to permit a demonstration of its use by Weirman, assistant trainmaster for defendant. Plaintiff asserts that evidence of a violation of the Federal Safety Appliance Act was uncontradicted; that the angle cock did not operate efficiently; and that as a consequence the train hit the embankment. But there is no actual evidence of any defect; on the contrary, such evidence was entirely circumstantial, and rested entirely on the assumption that plaintiff could descend the back ladder of the hopper car, grasp the ladder with one arm, and bend over and open the angle cock, all within a very short space of time—four seconds, as defendant computes it from plaintiff's own testimony as to the speed of the train and the distance to the embankment. This presented a question of fact for the jury as to whether the use of a tail hose, rather than the method employed by plaintiff, could have stopped the train in time to avert the accident. It should be noted that plaintiff filed his case and tried

507–17

it on the FELA charges of negligence, much broader in scope than the charge of brake failure predicated on the Federal Safety Appliance Act, set forth in count II. It was only after the presentation of his case in chief, after two and one-half days of trial, that plaintiff presented the amendment to the complaint, adding the Safety Appliance Act count. By that time the tail hose was already in issue in the case. Plaintiff's witness Edwards had already testified that employees were required to use tail hoses in stopping the trains, but added that plaintiff never did; and indeed plaintiff admitted he would have been in a much safer position had he used a tail hose, but denied the existence of an order requiring its use by employees.

Another phase of the tail-hose controversy embraces plaintiff's charge of perjury on the part of one of defendant's witnesses. On trial, defendant called Charles Weirman, who was assistant trainmaster on March 29, 1955, the date of this accident. Weirman had held this position from March 16, 1952, until some time in 1956. He testified that about two weeks after assuming this position he had "issued instructions over [his] signature that crews setting empty cars on a hill at the mines in the vicinity would use the tail hose in this operation." This is the testimony plaintiff claims constitutes perjury. On cross-examination Weirman was asked where these instructions were, to which he answered, "I don't really know . . . ," but added that bulletins of this type were ordinarily kept as part of the permanent records of the company. Plaintiff's post trial affidavit and the deposition of Jack Burge, who was employed as a clerk-crew dispatcher in the Bicknell office of defendant, state that the search for the notice had been conducted by Burge, and that Weirman's notice had not been located; that following the trial, Burge informed plaintiff that he had been

present in Chicago on October 31 and November 1, 1957, that upon his return to Bicknell he was requested by a claim agent to search for the bulletin or order issued by Weirman, that on Saturday, November 2, 1957, he found one issued by Weirman on the date of plaintiff's accident, and that he immediately notified defendant to that effect. Burge's deposition was taken subsequent to the trial, and these facts were confirmed. In that deposition Burge stated that when he returned to Bicknell on Saturday, November 2, 1957, he found the bulletin issued by Weirman on the date of the accident and left it at the home of Frank Wright, defendant's engine house foreman, according to the instruction given by the claim agent; and he added that this was the only bulletin issued by Weirman that he could find. Commenting on this phase of the evidence, plaintiff's counsel says:

It is interesting to note that the only instruction or bulletin Weirman ever testified to was one purportedly issued in 1956 (A. 167), but it was conclusively shown that (1) such was not the fact, and (2) that defendant knew that it was not the fact on Saturday, November 2, 1957, and nevertheless had the witness testify on Monday, November 4, 1957, that the date of issuance of the said bulletin was in 1952.

It appears, however, that there was more than one "tail-hose" bulletin—defendant makes reference to four. Weirman issued two such orders, the first in 1952, shortly after he assumed the position of assistant trainmaster, the second, the day of plaintiff's accident; Lloyd Jones, the yardmaster, had posted one in 1949, as did Weirman's successor, Eannace, in 1956. The evidence discloses that some of the men found the tail hose cumbersome and failed to use it unless they were, from time to time, ordered to do so. Shortly after Weirman assumed his position as assistant trainmaster and assistant road foreman and saw that the

■■■■■■■■■■■■■■

tail hose was not being used, he issued a bulletin ordering its use. On the day of the accident, when he saw that the tail hose had not been used, he re-issued the order and threatened that the job would be policed and offending crews held responsible. Moreover, there was a general order contained in the book of safety rules issued to plaintiff, with which he admitted familiarity. Rule No. 1017 of the Safety Manual reads: "Manipulating Angle Cock on Moving Engine, Train, or Cabin Car without the Use of Special Equipment for the Purpose, except in emergency, is Prohibited." Despite the evidence of the rule prior to the date of the accident, plaintiff contends that defendant's counsel suborned perjury on November 4, 1957, when he permitted Weirman to testify as to the prior existence of the rule. It is charged that perjury took place because defense counsel knew, or must have known, that on Saturday morning, November 2, 1957, Burge had tried unsuccessfully to find Weirman's 1952 bulletin board notice in the freight house at Bicknell. Judge Crowley fully heard the substance of this charge, and we think he properly dismissed it.

■■■ Another charge of misconduct on the part of defense counsel arises from the service of a subpoena duces tecum directing that defendant produce on October 30, 1957, at 2:00 p.m., certain records showing the gross earnings of plaintiff during various years of his employment by defendant, and especially the gross earnings of brakemen on what is known as the turn-around job at Martinsville, Indiana, during the years 1955, 1956, and 1957. It appears that on the date in question A. L. Foster, defendant's claim agent, together with defendant's counsel, appeared before the trial judge and represented that some of the records sought by the subpoena were in Indianapolis; that it would take some time to obtain the information, but that they would produce it. When it came time to rest

507–20

plaintiff's case on Friday, November 1, 1957, it was done with the understanding that plaintiff would be allowed to reopen his case when the information sought by the subpoena was furnished, and in his post-trial affidavit plaintiff's counsel alleged that defendant represented that this would be done on the following Monday, November 4. On Monday morning defense counsel stated that he did not yet have that information, but would have it in the afternoon. Plaintiff's counsel further alleged that on that afternoon defendant for the first time "complained of the matters sought by the subpoena duces tecum and requested of the Court that it be not required to produce" the gross earnings of the brakeman at the turn-around job at Martinsville during 1955, 1956, and 1957. Although the record shows the issuance of the subpoena directing the production of certain records, there is nothing to suggest that any of the information sought therein was ever turned over to plaintiff. Defendant's counsel, in their brief, say that in conference in Judge Crowley's chambers on November 2, 1957, a discussion was had which included (1) the propriety of allowing plaintiff to amend his complaint, and (2) evidence concerning plaintiff's earnings; and defense counsel comment that plaintiff has preserved only that portion of the conference relating to the first question, namely, the propriety of allowing plaintiff to amend his complaint by adding count II. The reference to the subpoena seeking pay records is found only in post-trial affidavits made on behalf of plaintiff. Defense counsel assert that in the discussion in chambers it was agreed that the substance of the information sought by the subpoena duces tecum would be read into the record by stipulation; that they then returned to the courtroom, where plaintiff read into evidence the stipulated evidence regarding earnings; and that immediately thereafter plaintiff closed his case. There

507–21

is the further statement of defense counsel that there was a short informal discussion on the subject of plaintiff's earnings, at the conclusion of which the judge indicated that in his opinion a report of the Martinsville turn-around earnings would not be admissible in evidence, and that plaintiff's counsel did not press the point further. This version of defense counsel is contradicted in the ex parte affidavits filed subsequent to the trial; they deal largely with matters that are alleged to have occurred outside the presence of the court. It must be presumed, however, that the trial judge knew what statements were made in his presence, and while affidavits may be used to refresh his recollection, such affidavits may not be considered on appeal unless the facts and matters contained therein are certified as correct by the trial judge, as part of the report of proceedings. Dreyer v. People, 188 Ill. 40; Mayes v. People, 106 Ill. 306; Rock Island & P. R. Co. v. Kepple, 106 Ill. App. 303.

The significance of the Martinsville turn-around wage scale is its relation to the measure of damages. That job, which had a higher wage scale than the job plaintiff held at the time of the accident, had been open to him for more than a year prior to the accident, but he had never taken the Martinsville job. It has been held that damages which are merely possible are speculative (Salaban v. East St. Louis & Interurban Water Co., 284 Ill. App. 358), and that recovery for the future loss of earning capacity must be limited to such loss as is reasonably certain to occur (Isbitz v. Chicago City Ry. Co., 192 Ill. App. 487). We think that Judge Crowley was correct in concluding that the Martinsville turn-around earnings record would not have been admissible in evidence, even if it had been properly offered.

Finally, it is urged in post-trial affidavits that defense counsel "reneged" on a settlement of the

507–22

case. The Chicago Milwaukee, St. Paul and Pacific Railroad had an agreement with the Pennsylvania for sharing losses, under which the Chicago Milwaukee would be obliged to pay sixty-five per cent on any loss or settlement. Plaintiff's counsel says that Edwin Schiewe, general solicitor of the Milwaukee, was willing to settle at $100,000, but would so do only with the consent of the Pennsylvania's attorney, and that he informed plaintiff's counsel that it "was entirely up to the Pennsylvania." Defendant's counsel refused to recommend a settlement in that amount. Plaintiff's attorney claims that he considered the matter as having been settled and therefore dismissed Durkin, an expert witness, who had been waiting to testify, and that when counsel learned on November 4, 1957, that the case could not be settled, Durkin was no longer available. It appears from a post-trial affidavit of plaintiff's counsel that Durkin was visiting his married daughter in Park Forest, Illinois. The affidavit does not disclose how long Durkin visited his daughter and whether any efforts were made to locate him after the settlement had failed and during the pendency of the trial; but since Park Forest is within commuting distance of Chicago it would have been possible to put Durkin on the stand on November fourth or to continue the matter another day, until November fifth, without disbanding the jury. The fact remains, however, that no motion was made for a continuance pending a search for the witness. The law is well settled in Illinois that an absolute prerequisite to a motion for a new trial as a result of the absence of a material witness is a motion presented by the interested party asking the court to continue the cause pending search for the witness. Kendall v. Limberg, 69 Ill. 355; Mastin v. National Tea Co., 278 Ill. App. 60; Casey v. Sawyer Biscuit Co., 163 Ill. App. 145. In fact, the granting of a motion for a new trial, in the

507–23

absence of a prior motion for continuance, has been held, in the Mastin case cited above, to be reversible error. We find nothing of record to indicate that any complaint was made to Judge Crowley regarding a missing witness. The sole point with respect to Durkin's testimony is that plaintiff was denied the opportunity of corroborative testimony; as an experienced railroad man Durkin was prepared to testify that, in the words of plaintiff's chief counsel, "the airbrakes were not operating efficiently." On the authority of Nehring v. Ricker, 126 Ill. App. 262, a party cannot proceed without asking a continuance, knowing of a witness whose testimony will tend to corroborate him, and then have a new trial in order to produce such witness.

The foregoing charges, which are discussed at length in the respective briefs of counsel, were rejected in their entirety by Judge Crowley after a full hearing. Plaintiff has not seen fit to preserve the record of proceedings before the trial judge, nor of his rulings thereon. On the basis of what is before us, we think these charges were properly rejected.

From an exhaustive examination of the record, we are convinced that the case was carefully and impartially tried by the court, and, finding no convincing reason for reversal, we affirm the judgment of the Circuit Court.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.