HOLLAND *v.* McRAE OIL AND FERTILIZER COMPANY.

FISH, C. J. 1. Where a plaintiff sought to recover damages on account of physical injury, alleging in his petition that the injury was permanent and that his entire earning capacity was destroyed, and that he had not earned anything since receiving the injury, it was competent for the defendant, upon the trial of the case, to show that the plaintiff had had employment since the injury, had earned certain amounts of money therefrom and had been offered a position at given wages.

(a) In such a case, in connection with testimony tending to show that the plaintiff was capable of doing work, it was competent for the defendant to show that since his recovery the defendant (his former employer) had offered him employment at certain wages. The weight to be given to such evidence, in considering what opportunity for obtaining employment and earning money he had, was for the jury, along with evidence as to his capacity to perform the duties of the offered position.

(b) The offer of employment in this case did not appear to have been made in connection with any effort to compromise.

2. Where in such a suit no claim was made for physician's bills, or for exemplary or punitive damages, and there was no claim that the injury was maliciously inflicted, it was not competent to show that the defendant had paid the physician's bill of the plaintiff, or had furnished groceries to him, there being no counter-claim or issue made by the pleadings in regard to such subjects.

3. If the question as to who was the general manager of a manufacturing company, which operated a mill, was material, it was not competent to show, by the testimony of a witness who was the superintendent of such mill, that he supposed that a named person acted as the general manager.

4. Where the plaintiff contended that a certain appliance of the defendant had been left in a dangerous condition by the superintendent of its mill, and this was denied by the defendant, it was not competent to have such superintendent, as a witness, give in general terms his opinion as to whether he had left such appliance in a dangerous condition or not. The facts should be proved for the consideration of the jury.

5. Where the plaintiff alleged that a certain hood, or cap, connected with a cup elevator in an oil-mill, had originally been properly and securely constructed and fastened, so as to be safe, and that the superintendent and alter ego of the defendant had removed such hood or cap and replaced it with insecure fastening, so as to leave it in a dangerous condition, and that by reason thereof it gave way when plaintiff rightfully took hold of it, and precipitated him into a seed conveyor, thereby causing him injury, it was not error to allow a witness, who, at the time of the occurrence in question and for some time prior thereto, was an officer of the defendant corporation and connected with the management of its mill, to testify that when he returned to the mill a few hours after the plaintiff was injured, the hood was there like it had always been.

6. Notice to an officer of a corporation, acting for it in connection with its business, and within the scope of his agency, is notice to his principal.

(a) The charge of the court on this subject, as set out in the eighth and tenth grounds of the motion for a new trial, is not entirely clear, but on another trial any inaccuracies will doubtless be corrected.

7. Under the evidence, there was no error in charging as follows: "I charge you further that . . if you should find that both the injured party and the defendant were innocent and that the catastrophe was the result of accident, . . there could be no recovery."

8. A master is bound to exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. A like measure of dili-

gence is imposed in reference to furnishing a reasonably safe place for his employees to work. If there are latent 'dangers in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he must give the servant warning in respect thereto. But if there are latent defects in machinery or appliances or incident to the employment of which the master does not know, and could not know by the exercise of ordinary care, he will be excused for a failure to discover them.

(a) It was not an exact statement of the rule of law to make the question of excusing the master for not discovering latent defects turn on whether they were "such as to deceive human judgment."

9. Where the plaintiff alleged that he was injured by reason of the negligence of a superintendent and alter ego of a corporation for which he was working, and this was denied by the defendant, although the circumstances showed that such person, at times, performed manual labor for the defendant company, yet where it showed, without conflict, that he was the superintendent in charge of the operation of the manufacturing plant of the defendant, with power to direct its operation and to employ and discharge the laborers and to determine the number of them required, to put them at whatever work he directed and to change them as he saw fit, he was, relatively to the duty of giving notice of a danger known to him to a laborer to whom the same was unknown, the alter ego of the corporation, although there were two other officials of the company who were superior in command to him and who also gave direction to him and others. *Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 609 (56 S. E. 839, 10 L. R. A. (N. S.) 772).

(a) Under such facts, it was error to charge as follows: "If you should find that he [such superintendent] was not in charge, but find that he was a mere fellow-servant and not an alter ego or a vice-principal, if you should find that to be the fact of the case and find that he was merely a fellow-servant with the plaintiff, then I charge you that the plaintiff could not recover."

*Judgment reversed. All the Justices concur.*

JUNE 25, 1910.

Action for damages. Before Judge Martin. Telfair superior court. February 9, 1909.

*W. W. Bennett* and *Hardeman, Jones & Johnston,* for plaintiff.

*Thomas Eason* and *Graham & Graham,* for defendant.