## BOWMAN-HICKS LUMBER CO. v. ROBINSON. *

(Circuit Court of Appeals, Ninth Circuit. November 29, 1926.)

No. 4893.

1. Master and servant ⊜⟹270(3)—Testimony of workman within Oregon statute, as to whether he had time to get away from place of work to avoid injury, held immaterial (Laws Or. 1913, p. 188).

Where an employer was required by Oregon statute (Laws Or. 1913, p. 188) to furnish a reasonably safe place for employees to work, a question asked an employee, on cross-examination in an action by him for personal injury, whether he had time to get away from the place where he was working to avoid the injury, held properly excluded.

2. Master and servant ⊜⟹270(9)—Employer's testimony as to absence of similar accidents held immaterial.

Whether defendant employer ever had another accident similar to the one which injured plaintiff employee held immaterial.

3. Damages ⊜⟹182—Evidence of general policy of employer as to giving employment to injured employees held inadmissible, in absence of claim of promise to give employment.

Exclusion of a question as to the policy of defendant to give employment to injured employees, in action for injury to an employee, held not error, where no claim was made of an agreement or promise to give employment to plaintiff.

4. Trial ⊜⟹260(1)—Refusal of requested instructions not error, where law is fully and correctly stated in charge given.

Where the law of the case is fully and correctly stated in the charge of the court, it is not error to refuse special requested instructions.

5. Negligence ⊜⟹136(14, 26)—Negligence and contributory negligence held for jury.

What constitutes negligence or contributory negligence in any given case depends on all the circumstances, major and minor, and generally a court cannot safely go further than to state the general rule or principle by which the jury is to judge the issue in the light of all the circumstances.

*Rehearing denied January 31, 1927.

6. Damages ⊜⟹216(1)—Instruction as to recovery for injuries held adequate and fair.

Instruction as to damages recoverable in action for personal injury held adequate and fair.

7. Appeal and error ⊜⟹1004(3)—$40,000, damages for personal injury held not so excessive as to warrant interference with discretion of trial court.

Verdict for $40,000 in action for personal injury held not so grossly excessive as to authorize the appellate court to revise the discretion of the trial court in denying a new trial.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by Glenn W. Robinson against the Bowman-Hicks Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George T. Cochran and Colon R. Eberhard, both of La Grande, Or., for plaintiff in error.

William P. Lord and Arthur I. Moulton, both of Portland, Or., for defendant in error.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

DIETRICH, District Judge. Plaintiff had judgment below for $40,000 as damages for personal injuries suffered by him while he was employed by defendant in decking logs. The accident happened in Wallowa county, Or., December 29, 1924. Defendant was engaged in gathering logs from territory adjacent to its logging railroad and piling them alongside the track, preparatory to loading them on cars for transportation to its mill.

Described generally, the machinery or "skidder" consisted of a railroad flat car with a donkey engine on each end of it, equipped with drums, pulleys, sheaves, blocks, cables, and other appliances commonly used in such operation. The main cable, approximately 1,000 feet in length, was drawn from the drum out into the woods and attached to a choker line, which was looped about one end of the log, and in this way the log was dragged endwise to the place where the deck was to be made. When the forward end reached a point where it was desired to place the log, the decker applied a decking hook, attached to another cable, to the other end. The operation then was such that, as this line was drawn taut, the hook engaged firmly with the log and remained attached until that end was drawn in, so that the log lay in place, parallel with the track, at which point the

hook automatically disengaged. If, after the pile reached a substantial height, the choker line should become disconnected from the cable before the log was in place, as sometimes happened, the engineman or "drum puller," as he is called, would lose control, and the log might roll down from the pile, with peril to any one standing in close proximity.

When the logs lying within a given range were all drawn in and decked, the car or skidder was moved forward and another deck made. In orderly procedure, the small trees and large underbrush were cut and cleared away in and about each decking place, before the decking began.

The plaintiff had for some time been employed cutting wood, and for only two or three days prior to the accident had he acted as decker. As such decker it was his duty to attach to the after-end of the log the decker hook, as above explained. At the particular time in question the crew was decking a butt log of unusual size, and twice it had escaped control and rolled down from the pile, which had reached a height of approximately 10 feet. After applying the hook a third time and signaling the engineer to go ahead, plaintiff moved some distance back and to one side. The log, again escaping control, rolled in his direction and broke down a small standing tree, which fell upon him, fracturing his skull and inflicting other serious injuries.

The negligence charged is: (1) That defendant failed to clear the decking ground of trees and underbrush, thus not only subjecting plaintiff to peril from falling trees, but making it difficult for him to reach a place of safety after adjusting the decking hook; (2) that the hook was so dull that it would not properly engage the end of the log; (3) that an antiquated and inefficient type of choker hook was used, it being contended that it was so open that, in the event of slack in the line, it would disengage and thus release the log from the engineer's control; and (4) that defendant failed to prescribe reasonable rules and regulations for safely conducting the operation.

Clearly we think plaintiff was engaged in a hazardous occupation, involving risk and danger, and hence, under the Oregon Workmen's Compensation Act (Or. Laws 1913, c. 112, and amendatory acts), it was the duty of the defendant to use every device, care, and precaution for the protection and safety of plaintiff that could practicably be employed, consistent with the efficiency of the work, without regard to the additional cost incurred thereby.

16 F.(2d)—16

Five of the 13 assignments of error have to do with the reception and exclusion of evidence. All of them are thought to be without merit:

[1] (a) The court sustained plaintiff's objection to the question put to him on cross-examination, "Now, was any time allowed you in which you might have made a clearing?" The statute imposed upon the defendant the nondelegable duty to provide a reasonably safe place in which to carry on the work.

[2] (b) The court also sustained plaintiff's objection to the question put by defendant to one of its representatives, "Ever have any other accident similar to this?" Conditions and circumstances at different times and places are so various that the answer could have been of no probative value. Besides, plaintiff tendered a withdrawal of the objection upon condition that he be permitted to show that at other times there were near accidents of like character, which defendant declined.

(c) It was not improper for the court, upon cross-examination, to permit plaintiff to ask Robertson, defendant's superintendent of the work, whether he was aware of the provisions of the Oregon Employers' Liability Act. The question had a bearing upon his attitude, but, if it should be regarded as immaterial, it was clearly without prejudice; the court was bound to and did disclose to the jury the material provisions of the act.

[3] (d) Neither was it error to decline to permit one of the defendant's representatives to answer the question, "What is the policy of the company relative to employing men who have been injured?" There was no pretension of any guaranty or willingness on the part of the defendant to give plaintiff permanent employment after his injury.

(e) Manifestly there is no merit in defendant's objection that it was incompetent for the plaintiff to testify that after and because of his injury he could not stand cold or damp weather, and that when it was cold and damp "it seems as though circulation stops on that side."

[4] Four of the assignments involve the declination of the court to give separate requested instructions to the effect that, even if the jury found that the defendant was negligent in the several respects specified in the complaint, the plaintiff could not recover unless he established, by a preponderance of the evidence, that the plaintiff's injury was the direct and natural consequence of such negligent act or omission. The principle embodied in the requests is correct, but it was not incumbent upon the court to repeat it

with regard to each specification of negligence; and upon examination it turns out that such is the only possible basis for the assignment. The court, once for all, clearly advised the jury that it was incumbent upon the plaintiff "to state in his complaint the particular acts of negligence or particular things which he charges the defendant either did or neglected to do, and therefore plaintiff in this case must recover, if at all, upon one or more of the several grounds of negligence charged in the complaint," and further that "it must appear, in addition, that the acts of the defendant in which it was negligent, in either one or more of the particulars stated in the complaint, were the proximate cause of the plaintiff's injuries. Of course, if the defendant was negligent, and that negligence did not cause the plaintiff's injury, the plaintiff would not be entitled to recover in this case."

The court amplified the statement by illustration, clearly explained what is meant by "proximate cause," warned the jury that plaintiff could not recover for an injury which was due to a "pure accident," and further that negligence could not be "inferred simply from the existence or occurrence of an accident which causes the injury. The happening of an accident is not proof in itself of negligence; and it is not sufficient in itself to support or justify a recovery, but it must appear that the injury was due to the negligence of the defendant; in other words, that the defendant was negligent in one or more of the particulars stated in the complaint, and that such negligence was the cause of plaintiff's injury." The court further explained that the burden of proof was upon the plaintiff to show that the defendant was negligent.

[5] Two of the assignments relate to two separate requests for peremptory instructions to the effect that if the jury found, from a preponderance of the evidence, certain supposed conditions, they should conclude that the plaintiff was guilty of contributory negligence. The requests were in the nature of arguments, and it would have been error for the court to grant them. What constitutes negligence, or contributory negligence, in any given case, depends upon all of the circumstances, major and minor, and, generally speaking, a court cannot safely go further than to state the general rule or principle by which the jury is to adjudge the issue, in the light of all the circumstances.

[6] Under the twelfth assignment it is urged that the court erred in advising the jury that "there is no rule known to the law by which the question [of the amount of damages] can be determined." Standing by itself, the statement would be open to objection; but the court made clear that he intended only to say that there was no definite standard or measure—no rule of law—for determining the precise amount. He went on to explain: "If the value of an article having a market value were in question, there is some standard by which the court and jury can determine that question; but when it comes to the death of a human being, or an injury of a human being, there is no such standard, and it must be left to the sound judgment and discretion of the jury. * * * It is not to be determined by sympathy or prejudice. The question is to be considered, weighed, and determined by you impassionately, in order that you may arrive at such a sum as in your judgment should fully compensate plaintiff for the injury he received, if he is entitled to recover. Now, in doing so you will have the right, and it is your duty, to take into consideration the nature and character of his injury, his loss of service on account of the injury, the pain and suffering that he may have endured on account of the injury, his present condition, whether it is probably permanent or temporary, his impaired earning capacity, and from all these things determine as best you can what in your judgment will fairly compensate him in dollars and cents for the injury he has received, if you think he is entitled to recover, making such deduction, if any, as you think should be made on account of his own acts if he was guilty of contributory negligence." The instruction as a whole is thought to be both adequate and fair.

[7] Under assignment 13, defendant contends that it was an abuse of discretion for the trial court to decline to grant a new trial upon the ground particularly that the verdict was so excessive as to imply passion and prejudice, or a gross mistake of fact upon the part of the jury. While we may think it a case where it would have been eminently proper for the court to grant a new trial upon that ground, in the event of plaintiff's unwillingness to accept a substantial reduction, we are not convinced that the verdict is so grossly excessive as to bring the case within the narrow compass within which an appellate court may review and revise the discretion of the trial court. There are no other circumstances suggestive of passion or mistake. Out of numerous cases the following may be cited as fairly representative: Wulfsohn v. Russo-Asiatic Bank (C. C. A.) 11 F.(2d) 715, 718; Detroit U. Ry. Co. v. Crav-

en (C. C. A.) 13 F.(2d) 352, 354; Robinson v. Van Hooser, 196 F. 620, 116 C. C. A. 294; Pugh v. Bluff City Excursion Co., 177 F. 399, 101 C. C. A. 403; New York C. & H. R. R. Co. v. Fraloff, 100 U. S. 24, 25 L. Ed. 531; Wilson v. Everett, 139 U. S. 616, 11 S. Ct. 664, 35 L. Ed. 286; New York, Lake Erie R. Co. v. Winter, 143 U. S. 60, 75, 12 S. Ct. 356, 36 L. Ed. 71; Lincoln v. Power, 151 U. S. 436, 14 S. Ct. 387, 38 L. Ed. 224.

Finding no reversible error, we are constrained to affirm the judgment.