**Louis E. ZIMMERMAN, Plaintiff,**

v.

**MONTOUR RAILROAD COMPANY, a corporation, Defendant.**

**Civ. A. No. 17825.**

United States District Court
W. D. Pennsylvania.

Feb. 20, 1961.

Dennis C. Harrington (of McArdle, Harrington & McLaughlin), Pittsburgh, Pa., for plaintiff.

Rose, Houston, Cooper & Schmidt, Pittsburgh, Pa., for defendant.

WALLACE S. GOURLEY, Chief Judge.

In this civil non-jury proceeding under the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., the Court previously concluded the defendant, Montour Railroad Company, a corporation, was liable for damages sustained by the plaintiff, Louis E. Zimmerman, as a result of injuries sustained on November 14, 1958.

After a most thorough hearing and review of the record and all exhibits, I now direct myself to an evaluation of plaintiff's damages.

Plaintiff suffered a severe crushing injury of the right hand and lower forearm, necessitating amputation of the forearm up to four inches below the elbow. Plaintiff is a right-handed individual. Additional surgery was required in order to effectuate a skin graft which was secured from plaintiff's legs. A re-amputation was further performed to obtain a satisfactory healing of the stump. Much time and attention has been applied in an effort to make available for the plaintiff the best possible prosthesis. I believe everything has now been done which is known to medical science to aid the plaintiff with the best possible artificial limb.

Plaintiff experienced excruciating pain at the initial stages of treatment and continues to have gnawing and numbness in the stump which causes and will cause substantial pain, discomfort and inconvenience, which will continue from time to time at variable degrees during the remainder of his life.

Plaintiff is thirty years of age and his economic horizon in the field of labor is most substantially lost and seriously impaired. If the accident had not occurred and plaintiff had maintained normal health, he could have worked on the railroad for 33 to 34 years, 65 years being the compulsory retirement age. Plaintiff was earning $5,600 a year at date of accident and, unquestionably, his wages would have increased from year to year.

434

He could have also worked in other industry or endeavors after sixty-five. Plaintiff has a sixth grade education. In the absence of a tailor-made job his disability for the industrial market is most limited and would require a tailor-made job in the competitive industrial field of labor. I must be realistic enough to understand that in the labor market jobs are not made or created for a handicapped individual with a limited education. Industry and labor do not conduct business relations in such fashion.

During the course of this proceeding, approximately eleven months ago the court informally suggested to the defendant that the plaintiff be placed in light employment with the defendant in order that the court might ascertain with a greater degree of certainty the extent of plaintiff's capabilities and earning impairment. Now it appears, after this considerable lapse of time, that defendant, on the eve of the court's adjudication, suggests a custodial position at a salary of $3,800 per annum which entails dusting and cleaning offices, mowing grass, washing walls and windows, and removing snow.

It is admitted that the allegedly proffered job is presently held by a woman employee, and that her removal would require union approval, and that the hiring of plaintiff would require union approval. If plaintiff secured this employment, it is most doubtful that he could, with the use of a prosthesis, climb ladders in order to wash walls and windows.

In view of the belatedness of the suggested position for plaintiff, and the doubtfulness which exists in the court's mind that a corporation would pay a substantial annual wage to perform menial assignments consistent with plaintiff's disability, together with the conjecture which necessarily shrouds the availability of said employment, I do not look upon this job as being offered in good faith. In the event plaintiff were so employed, if defendant were to see fit to release him from this employment, he would become a nondescript on the industrial market for all practical intents and purposes.

Accordingly, the alleged proffered employment, in my judgment, is without probative value in a fair appraisal of plaintiff's impairment of earning power.

Recapitulation.

a. Plaintiff has suffered a substantial loss in wages from the date of the accident to the present time in the approximate amount of $10,000.

b. Plaintiff must have considerable rehabilitation training with his handicapped condition in order to accustom himself to make the best possible use of his prosthesis or artificial limb.

c. The cost of said additional training would be in the approximate amount of $3,500.

d. Plaintiff has suffered and will experience for the balance of his working life a most substantial and permanent impairment of earning power in the competitive industrial labor market.

e. The permanent impairment of earning power in the competitive industrial labor market of the plaintiff classifies him as a nondescript, or a person for whom in the industrial labor market a job must be created or made available for him.

f. The plaintiff has, is and will for the rest of his life suffer extreme pain, suffering, inconvenience, embarrassment and discomfort as he walks down the pathway of life. This loss in money damages can never be sufficient, regardless of amount, to replace what only The Almighty can give to mankind.

g. All that has been stated casts a dark shadow on his economic horizon and social perspective which, at the least, pictures an individual who has a bleak and despairing existence for the balance of his life.

In view of the foregoing and after a most thorough evaluation and intensive scrutiny of all the evidence in the proceeding, it is my considered judgment that a fair and appropriate award is $93,500.

An appropriate Order is entered.