Argued October 12, reversed and remanded December 1, 1971,
petition for rehearing denied January 18, 1972

ALVAREZ, *Respondent, v.* GREAT NORTHERN
RAILWAY COMPANY, *Appellant.*

491 P2d 190

*Cleveland C. Cory,* Portland, argued the cause for appellant. With him on the briefs was Clarence R. Wicks, Portland.

*Gerald R. Pullen,* Portland, argued the cause for respondent. With him on the brief were David R. Vandenberg, Jr. and James A. Myers, Klamath Falls.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON,* Justices.

---

* Bryson, J., did not participate in this decision.

TONGUE, J.

This is an action under the Federal Employers' Liability Act by a railroad car inspector for damages for personal injuries sustained at Klamath Falls. Defendant appeals from a judgment awarding plaintiff $19,388.16 special damages and $171,000 general damages.[1]

The accident occurred on July 28, 1967. Plaintiff had finished inspecting freight cars in one of defendant's trains. At that time he was about one-half mile from the yard office. As the train pulled out he got on one of the cars to ride back to the yard office, as he had often done in the past.

On such previous occasions, however, the trains had either stopped or slowed down for a switch beyond the yard office, so as to make it possible for plaintiff to get off at the yard office. On that night, however, the switch had been previously "lined" and the train went by the yard office at a speed too fast for plaintiff to get off. When the train still did not slow down, plaintiff tried to get off and was hurt.

Plaintiff's complaint alleged that defendant was negligent

"In negligently operating its train contrary to custom and practice, in that said train, at the time and place plaintiff was injured, was highballed out of the yard without slowing or stopping to allow plaintiff and other workmen to detrain as was customarily done."

---

[1] There were two causes of action for two separate injuries. Defendant appeals from that part of the judgment awarding damages for the second injury, but not from the judgment awarding $1,268.76 special damages and $9,600 general damages for the first injury.

Plaintiff's complaint also alleged:

"That defendant failed and neglected to provide plaintiff with a reasonably safe place to work in that:

"(a) In requiring plaintiff to alight from the train of defendant at a time when the same was operating at an excessive speed.

"(b) By the failure of the officers in charge to notify plaintiff and other members of his crew of what they intended doing at said time and place regarding train movements.

"(c) In failing to slow down the speed of the train so that plaintiff could safely detrain.

"(d) In failing to furnish sufficient help and equipment to drive and transport crew members, including this plaintiff, to the arriving trains at the exact time the trains arrived."

Defendant concedes on this appeal that there was evidence from which the jury could have found that it was negligent "in failing to slow down the speed of the train so that plaintiff could safely detrain," but contends that it is entitled to a new trial because the trial court erred in refusing to withdraw all of the other specifications of negligence. It thus becomes necessary to review the evidence on each of such specifications.

1. *There was evidence that this train was operated contrary to past custom and practice.*

■ Defendant does not contend that the "high-balling" of a train out of a yard without slowing or stopping to allow workmen to get off, contrary to previous custom and practice, would not constitute negligence. Defendant contends, however, that "high-balling" a train has nothing to do with its speed, but only means that the switches have been previously

"lined" so that the train can move out without stopping or slowing down; that there was no evidence that the speed of this train exceeded company rules; that plaintiff knew that if the switches had been previously "lined" by another crew a train would proceed out of the yards without stopping, and that there was no evidence that defendant knew that plaintiff would attempt to ride the train to the yard office, rather than walk back a half-mile.

Upon examining the record, however, we find that there was testimony, which the jury was entitled to believe, that even when the switches were previously "lined" the speed of outgoing trains in leaving defendant's Klamath Falls yard did not exceed four or five miles an hour, making it possible to get off without difficulty; that plaintiff's supervisor had never before seen a train leave the yard as fast as this train; that this train did not stop or slow down as it passed the yard office and approached the switch beyond the yard office, but kept picking up speed, with the result that plaintiff did not get off at the yard office, as in the past because the train was going too fast. Plaintiff also offered evidence that car inspectors frequently rode on trains back to the yard office and that defendant's supervisory employees were well aware of that practice.

In our opinion that evidence, which the jury was entitled to believe, was sufficient to support this specification of negligence.

2. *There was evidence that plaintiff was "required" to get off this train while operating at an excessive speed.*

■ Defendant contends that "requiring" is synonymous with "ordering" and "compelling" and that there

was no evidence that plaintiff was "required" to get off this train. In support of this contention defendant refers to testimony that plaintiff was told by his supervisor: "Don't get off, it's going too fast, you may hurt your back again" and was also told that the supervisor, who had a "walkie-talkie," would "get in touch with the yard office," apparently to stop or slow down the train. Defendant refers also to plaintiff's admission that despite that warning he then made his "own decision" to get off the train at the particular spot where he attempted to do so. Finally, defendant contends that plaintiff could not recover under this specification because there was no evidence that "defendant somehow *forced* plaintiff to get off the train."

On the contrary, and as contended by plaintiff, in order for the jury to find that plaintiff was "required" to get off the train it was not necessary to find that he was "ordered," "compelled" or "forced" to get off, because the term "require" is a generic term with several definitions, including:

> "3. *To call for as suitable or appropriate in a particular case*: need for some end or purpose: to demand as necessary or essential (as on general principles or in order to comply with or satisfy some regulation: *stand in urgent need of: to feel or be under the necessity of doing or being something specified.* Webster's Third New International Dictionary, p. 1929 (emphasis added)."

In determining whether plaintiff was "required" to get off that train the jury was entitled to consider all of the surrounding circumstances. First of all, this train, contrary to what the jury could find was the previous custom and practice, was "highballed" out of the yard without slowing or stopping and at a speed faster than on previous occasions. Once it passed

through the switch it was on the main line on its way to Bend. Plaintiff testified that when the train did not stop or slow down for the switch its speed increased to a speed of about 25 miles per hour; that the train then started to slow down and he felt the "couplers come together," so got down on the bottom steel step, thinking that the train was going to slow down for him to get off, but that instead he felt the train "stretch" and thus again increase its speed. The jury was thus entitled to find that plaintiff had a "Hobson's choice" of trying to get off in an area with gravel along the track, which he thought was less dangerous than a paved area just ahead, or going on to Bend.

Under this evidence the jury was also entitled to find that plaintiff was "required" to get off the train, in the sense that such action was "call(ed) for as suitable or appropriate" under those circumstances, and that to do so was an action which plaintiff was entitled to "feel or be under the necessity of doing." Accordingly, the trial court did not err in refusing to withdraw this specification of negligence from the jury.

3. *There was evidence that defendant had reason to know that plaintiff would ride on the train and failed to notify him of its intended operation of the train.*

■ In support of its contention that the specification of negligence should have been withdrawn from the jury, defendant contends: (1) that there was no evidence that defendant knew or had reason to know that plaintiff would be riding on that train; (2) that there was no custom or practice for outgoing trains to stop at the switch, and (3) that the usual procedure was for car inspectors to give an outgoing train a

"rolling inspection" of each car as it went by, and that company Rule 58 expressly prohibited car inspectors from riding on trains, so that defendant had a right to assume that plaintiff would complete such an inspection and then walk to the yard office.

Plaintiff offered evidence, however, that despite Rule 58 it was a customary practice for car inspectors to ride back to the yard office on outgoing trains; that defendant's officials had observed them riding on the trains, but had never reprimanded them for doing so, and that on this occasion plaintiff's immediate supervisor, the lead car inspector with whom he was working, suggested that they get on and ride that train. As previously stated, plaintiff also offered evidence that it was customary practice for outgoing trains to stop or slow down at the switch.

Because of this evidence, which the jury was entitled to believe, the trial court did not err in refusing to withdraw the specification of negligence.

4. *There was no evidence that defendant's failure to transport plaintiff to "arriving trains" was a cause of plaintiff's injury.*

■ In considering this final assignment of error it is important to bear in mind that this specification of negligence was that defendant failed to "transport crew members, including this plaintiff, to the *arriving trains* at the exact time the trains arrived."

Plaintiff contends that there was "ample evidence that transportation was indeed a problem"; that there was a "Cushman" cart used by car inspectors for transportation, when it was "working," both to "get to the job" and also to "get to the yard office" after completing an inspection, but that if the cart was not

working they would either walk or ride on a train. Plaintiff also contends that "defendant has not raised causation on this appeal," and that from this evidence the jury "could conclude" that the failure to provide such a cart for transportation "played a part in plaintiff's injury."

On the contrary, defendant contends that the trial court erred in submitting this specification to the jury because (1) "transportation was not a problem *so far as this arriving train was concerned,*" for the reason that the "head" of the train, where plaintiff started to inspect it, was only from 100 to 150 feet from the yard office, and (2) the failure to transport plaintiff to that *"arriving train"* had no "causal relationship" to the happening of this accident, which occurred several hours later (contrary to plaintiff's statement that defendant has made no such contention on this appeal).

After a careful examination of the entire record we conclude that these contentions by defendant are correct. It is true that there was some testimony that if the cart had been available after plaintiff had completed the inspection of this train at a point one-half mile from the yard office he might have used it to ride back to the yard office, instead of riding on the train, and that the jury might have found "that this played a part in plaintiff's injury."

This specification of negligence, however, can by no stretch of the English language be read so as to include a charge of negligence in failing to provide transportation *to* the yard office *after* completing an inspection. Instead, the only negligence charged by the specification was the failure to provide transportation *"to the arriving trains."*

There was no evidence to support such a charge of negligence in this case because the point where plaintiff started his inspection of this incoming train was only from 100 to 150 feet from the yard office. Also, and although the rule of proximate cause may be relaxed in F.E.L.A. cases, there is no evidence that a failure to supply transportation to that point had any causal connection or anything whatever to do with this accident. Accordingly, it was error for the trial judge to submit this specification of negligence to the jury over defendant's motion to the contrary.

5. *The improper submission to the jury of the specification of negligence not supported by evidence requires reversal for new trial.*

Defendant's brief contends:

"It is hornbook law that upon timely motion, a trial judge is required to withdraw from consideration of the jury any allegation of negligence which is not supported by some evidence, *Armstrong v. Stegen,* 251 Or 340, 343, 445 P2d 509 (1968). Thus, it is reversible error to submit to the jury a specification of negligence unsupported by evidence, and upon which the jury in its general verdict may have based its finding of negligence *Willard v. Hutson & Monroe,* 234 Or 148, 378 P2d 966 (1963). This rule is equally applicable to actions brought under the Jones Act (*Kaiser v. States Steamship,* 203 Or 91, 100, 276 P2d 410 (1954), or under the Federal Employers' Liability Act (*Henderson v. Union Pacific R. Co.,* 189 Or 145, 168, 219 P2d 170 (1950), and see *Muse v. Spokane, Portland & Seattle Ry. Co.,* 200 Or 463, 266 P2d 412 (1954))."

Defendant also contends that:

"* * * where the jury was repeatedly told by the court that it should return its general verdict for plaintiff if it found that negligence was estab-

lished 'in at least one * * *' of the charges of negligence submitted, the court's submission of the unsupported charges of negligence argued above was reversible error, since this Court cannot possibly ascertain what alleged act or acts of negligence entered into the verdict."

Plaintiff does not deny that it is reversible error to submit to the jury a specification of negligence unsupported by evidence and does not seek to distinguish any of the cases cited by defendant in support of that rule.

Indeed, it is a fundamental rule of practice in the representation of plaintiffs in personal injury cases not to oppose a motion to withdraw from the jury a specification of negligence unsupported by evidence, particularly when other specifications are supported by substantial evidence, since to oppose such a motion may invite reversal of a favorable verdict and judgment.

It may be that, under some circumstances, the refusal of a trial court to withdraw a specification of negligence unsupported by evidence, although error, could properly be held to be a harmless and non-prejudicial error.[9]

In this case, however, no such contention has been made by plaintiff and defendant has not had an opportunity to be heard on that question. On the contrary, plaintiff has rested his entire case on this appeal on the contention that all of the specifications of negligence alleged in his complaint were supported by substantial evidence. Under this state of the record, we

---

[9] See Zimmerman v. W. Coast T-O SS. Lines, 199 Or 78, 87, 258 P2d 1003 (1953); McVay v. Byars, 171 Or 449, 138 P2d 210 (1943); and English v. Royce et al, 220 Or 402, 404, 349 P2d 660 (1960).

do not reach for decision the question whether or not that error in this case was harmless and nonprejudicial.

It follows that the verdict and judgment on plaintiff's second cause of action must be set aside and remanded for a new trial.