Argued June 1, reversed and remanded September 10, petition
for rehearing denied October 23, 1973

# PLOURD, *Respondent, v.* SOUTHERN PACIFIC
# TRANSPORTATION COMPANY, *Appellant.*

513 P2d 1140

*James H. Clarke,* Portland, argued the cause for appellant. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, Portland, and Wayne Hilliard and Richard H. Williams, Portland.

*Edward J. Niland,* San Jose, California, argued the cause for respondent. With him on the briefs were Boccardo, Blum, Lull, Niland, Teerlink & Bell, San Jose, California, and Gearin, Landis & Aebi, Portland, and John Gordon Gearin, Portland.

Before DENECKE, Presiding Justice, and HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action for damages for personal injuries sustained by a brakeman on a freight train when, in the process of stopping that 74-car train, the "slack ran in" with such violence as to throw plaintiff to the floor of the caboose. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $400,000.

Defendant does not deny that there was sufficient evidence to take the case to the jury, but contends that it is entitled to a new trial because of various errors.

1. *The trial court erred in submitting to the jury a specification not supported by any substantial evidence.*

Plaintiff's complaint was in two counts. Count I alleged that defendant violated the Federal Employers' Liability Act, 45 USC §§ 51 et seq, in failing to provide plaintiff a safe place to work. More specifically, plaintiff's complaint alleged that defendant "failed to maintain and operate cars and train in a safe manner and further failed to equip, repair, maintain, and operate brakes on cars and the engine in a proper manner" in various respects, as specifically alleged. Count II alleged that defendant violated not only the F.E.L.A., but also the Boiler Inspection Act, 45 USC §§ 22-34, and the Safety Appliance Act, 45 USC §§ 1-16, in various respects, as also specifically alleged.

Defendant first assigns as error: (1) the giving of lengthy instructions relating to requirements of the Boiler Inspection Act and Safety Appliance Act; (2) the giving of an instruction that assumption of risk is not a defense in such a case, and (3) the failure to withdraw from the jury plaintiff's charges in both Counts I and II relating to operating a train on which the air hose chain was broken.

There was some evidence that some of the brake shoes on one of the locomotives were worn and thin and that this may have been "a contributing cause" to the sudden and unexpected slack action. There was no evidence, however, that a broken air hose chain had anything to do with that "slack action." The only evidence was that there was a broken air hose chain on one of the freight cars, so as to permit the air hose on that car to hang so low that it might be damaged.

There was no evidence, however, that the air hose on that or any other car was damaged or otherwise defective.

■ Because of the evidence relating to the brake shoes on one of the locomotives, plaintiff was entitled to some instruction relating to the Boiler Inspection Act, if not also the Safety Appliance Act. It may be that the instructions as requested and given on those two acts were more extensive and detailed than proper. Defendant's primary exception, however, was to the giving of any instruction under the Boiler Inspection Act. Its further exceptions relating to the content of such instructions are not entirely clear to us from the record.

■ We agree with defendant that the instruction on assumption of risk was not necessary, there being no such issue in this case. Whether the giving of that instruction constituted prejudicial error so as to alone require a new trial, is another matter.[1]

■ In any event, we hold that it was both improper and prejudicial for the trial court to refuse to withdraw the specifications from both Counts I and II relating to the broken air hose chain. It is well established in Oregon that it is error to submit to the jury any specification of negligence unsupported by evidence and that this rule is also applicable in actions under the Federal Employers' Liability Act. See *Alvarez v. Great North. Railway Co.*, 261 Or 66, 75-77, 491 P2d 190 (1971), and cases cited therein.

---

[1] See Siciliano v. Denver and Rio Grande Western R Co., 12 Utah 2d 183, 364 P2d 413, 414-15 (1961), *petition for cert dismissed*, 368 US 979, 82 S Ct 476, 7 L ed 2d 521 (1962). Cf. Wantland v. Illinois Central Railroad Company, 237 F2d 921 (7th Cir 1956); and Atlantic Coast Line Railroad v. Smith, 107 Ga App 384, 130 SE2d 355, 358 (1963).

Plaintiff says that defendant's motion was not sufficiently specific, but was a motion to strike the specifications relating to both the worn brake shoes and the broken air hose chain. The record shows that defendant's motion was to strike all of the allegations of Paragraph VII, subdivision 2 of Count I, which alleged both worn brake shoes and broken air hose chain. Defendant also moved to strike "each" of the two specifications of Paragraph IV of Count II (one of which alleged worn brake shoes and the other alleged the broken air hose chain). As a result, the attention of the court was sufficiently directed to the specification in each count relating to the broken air hose chain and it was error to fail to strike that specification in each count.

Plaintiff also says that the failure to strike and to withdraw that specification from each count of the complaint was not prejudicial because "the admitted existence of the broken air hose chain was not a significant factor in plaintiff's case." Because, however, there were only two other specifications of defective equipment (in addition to the specification in Count I of failure to properly *operate* the brakes and throttle), we cannot say that the broken air hose chain was not a "significant factor" in the deliberations by the jury in arriving at its verdict in this case. Accordingly, we hold that defendant is entitled to a new trial because of this error.

2. *The trial court erred in failing to instruct the jury that any award for loss of future wages must be on the basis of the present value of such benefits.*

Defendant next assigns as error the failure of the trial court to give its requested instruction to the jury that any award for loss of future wages and other

pecuniary benefits must be on the basis of the present value of such benefits. Cases holding that such an instruction must be given in cases under the Federal Employers' Liability Act include *Ches. & Ohio Ry. v. Kelly*, 241 US 485, 488-91, 36 S Ct 630, 60 L ed 1117 (1916), and *Gulf, C. & S.F. Ry. v. Moser*, 275 US 133, 135-36, 48 S Ct 49, 72 L ed 200 (1927).

In *Meier v. Bray*, 256 Or 613, 618, 475 P2d 587 (1970), we held that an award of damages in an action for wrongful death must be reduced to present value. More recently, and since the trial in this case, we also held in *Osborne v. Bessonette/Medford Mtrs*, 265 Or 224, 508 P2d 185 (1973), for much the same reasons, that in an action for personal injuries, an award for loss of future wages or for impairment of future earning capacity must also be reduced to present value.

■ We therefore must hold that the trial court erred in failing to give such an instruction in this case.[2] We need not decide in this case whether the failure to give such an instruction alone constitutes error so prejudicial as to require a new trial because the trial court also erred in failing to withdraw a specification of negligence unsupported by any substantial negligence.

3. *The trial court did not err in permitting plaintiff's expert witness to assume continued future increases in wage rates for the purpose of computing the present value of a proposed award for loss of future wages.*

Defendant also assigns as error the admission

---

[2] The reasons why the trial court failed to give such an instruction are not entirely clear and may have related to the form

(Continued on page 674)

of opinion testimony by a professor of economics called by plaintiff as an expert witness. That witness was permitted, over objection, to explain a computation of plaintiff's claim for loss of future wages, as shown by a large exhibit on butcher paper, which was also received in evidence. Defendant contends that it was error to permit this witness, based upon past history of wage increases, to project future wage increases for the next 23 years at an average of 5 per cent per year.[9]

The problem presented by this assignment of error is discussed in 2 Harper and James, The Law of Torts 1325-326, § 25.11 (1956), as follows:

"Greater confusion surrounds present damages for future loss. Future trends in the value of money are necessarily unknown and so always render such damages speculative in a way we cannot escape. If the estimates represent a straight-line projection of present living costs, they will be frustrated by fluctuations either way. If prophecy of change is

(Continued from page 673)

of the requested instruction. That question is not discussed in the briefs, however, and for this reason we do not expressly approve the form of the instructions requested by defendant in this case.

[9] In support of such contention defendant cites Williams v. United States, 435 F2d 804, 807 (1st Cir 1970); Sleeman v. Chesapeake and Ohio Railway Company, 414 F2d 305, 307 (6th Cir 1969); Raines v. New York Central Railroad Company, 129 Ill App 2d 294, 263 NE2d 895, 900 (1970), rev'd on other grounds, 51 Ill 2d 428, 283 NE2d 230 (1972); Armentrout v. Virginian Ry. Co., 72 F Supp 997, 1001 (SD WVa 1947), rev'd on other grounds, 166 F2d 400 (4th Cir 1948); Petition of United States Steel Corporation, 436 F2d 1256, 1279-80 (6th Cir 1970), cert denied, 402 US 987, 91 S Ct 1649, 29 L ed 2d 153 (1971). Some of these cases are not directly in point, but others support defendant's position. To the contrary, see Scruggs v. Chesapeake and Ohio Railway Company, 320 F Supp 1248, 1251 (WD Va 1970); Resner v. Northern Pacific Railway, 505 P2d 86, 88-91 (Mont 1973); and Beaulieu v. Elliott, 434 P2d 665, 671 (Alas 1967). Cf. Grunenthal v. Long Island R. Co., 393 US 156, 160-61, 89 S Ct 331, 21 L ed 2d 309 (1968). See also Annot., 12 ALR2d 611 (1950).

heeded, frustration will follow if no change, or the opposite change, occurs. When courts have consciously grappled with the problem they have either found all prophecy too speculative and so, perforce, have taken the equally speculative course of betting on a continuance of the status quo; or they have made intuitive and not always very wise judgments that present conditions represent a departure from some imaginary norm to which they think we shall rapidly return. It is not at all clear that courts would be willing to hear experts on the matter, or that they would get much real help if they did. For the most part the problem—which is inevitably present in every case of future loss—is not analyzed and the present value of money is assumed to be the proper basis."

■ This court held in *Sandow v. Weyerhaeuser Co.*, 252 Or 377, 380, 449 P2d 426 (1969), that expert opinion testimony is admissible whenever the subject matter involved is "sufficiently technical" that a lay juror cannot be expected to be equally well qualified to form a worthwhile judgment. To the same effect, see *Ritter v. Beals et al*, 225 Or 504, 525, 358 P2d 1080 (1961).

Applying this test, the Oregon courts have permitted expert opinion testimony in cases involving technical subjects beyond the understanding of the ordinary lay juror, such as in medical malpractice cases, personal injury cases involving medical questions of causation, diagnosis and prognosis and in cases involving engineering or architectural questions of safety in the construction of buildings.

It may be true that the subject of computing the present value of future wage losses or impaired earning capacity, including the question of what, if any, consideration is to be given to future increases

in wages or earnings is not entirely comparable to the subjects involved in such cases.

Nevertheless, it is our experience that the computation of the present value of future wage losses or impairment of earning capacity is not a simple problem, but involves the application of mathematical principles beyond the understanding of most lay jurors and that attorneys and judges themselves sometimes have difficulty in making or understanding such computations, much less explaining them in such a way as to be understood by most lay jurors.

■ We have previously held that in such an action a jury must be instructed to reduce any award for future lost wages or impairment of earning capacity to the present value of such an award. In doing so in such an action the court or jury must necessarily assume and apply a proper discount rate of interest. In addition, the reduction of an award for future wage loss or impairment of earning capacity to the present value of such award by the application of any such discount rate of interest must necessarily assume that such an award will continue to bear interest at that same rate for the duration of the future wage loss or impairment of earning capacity.

■ Defendant does not object to the calling by plaintiff of an expert witness to present a computation of the present value of what plaintiff contended to be a proper award for plaintiff's future wage loss or impairment of earning capacity. That practice was approved by us in *Osborne v. Bessonette/Medford Mtrs, supra.* Indeed, the practice of calling expert witnesses by either party for this purpose may be the most reliable method of presenting these issues to a jury. See Leasure, How to Prove Reduction to

Present Worth, 21 Ohio St L J 204, 210-14 (1960); Eden, Proof of Lost Earning Capacity and Future Expenses, 16 Am Jur, Proof of Facts 701 (1965), and 1 Or St Bar CLE, Damages 12-8, § 12.7 (1973). What defendant objects to, however, is the assumption by such a witness of future wage increases at any given rate for the purpose of making such a computation, based upon a past history of previous wage increases and the opinion of the expert witness that wages will continue to increase in the future at the rate used by him in such computation.

In our opinion, however, it is no more speculative to assume that wage rates for plaintiff's employment will continue to increase at least 5 per cent per year for the next 23 years, based upon a history of such a rate of increase during the past 23 years, than it is to assume that the interest discount rate will remain stationary during the same 23-year period. In order to prepare a computation of the present value of an award in such a case an expert witness—and the jury —must necessarily assume either that wage rates and interest rates will remain stationary during the future period for which the award is made or that they will increase or decrease, and at some specified rate.

■ This court can take judicial notice of the history of wage increases for railroad workers for the past 25 years, including increases at an average rate of at least 5 per cent per year with a much higher rate of increase during the past five years.[9] As stated in *Scruggs v. Chesapeake and Ohio Railway Company,*

---

[9] See US Dep't of Labor, Bureau of Labor Statistics, Bull No. 1312-8, Employment and Earnings 1909-71, 503-04; US Dep't of Labor, Bureau of Labor Statistics, 19 Employment and Earnings, Feb 1973, at 96; and US Dep't of Commerce, Social and Economic Statistics Administration, Statistical Abstract of the United States 1972, 228 (1972).

320 F Supp 1248, 1250-251 (WD Va 1970), in referring to the split of authority on this question and in holding that in computing the present value of an award in an action for wrongful death an expert witness may properly project a 5 per cent wage increase each year based on a 2 per cent productivity increase and 3 per cent inflationary increase:

"Other courts have pointed out that some inflation over a period of years seems to be a fact of life and that, as a practical matter, juries can scarcely be prevented from considering such elements in their deliberations. 'In determining what constitutes a reasonable amount of damages the shrinking purchasing power of the dollar must be borne in mind.' * * * Inflation is a topic of almost universal discussion and it seems improbable that the jury could avoid taking it into account even in the absence of any testimony about it. * * *"

This being so, we do not think that it is "pure speculation," as contended by defendant, for a qualified expert witness to infer from such a past history of inflation, including increases in wages, that during the next 23 years wage rates will continue to increase at an average of at least 5 per cent per year.

It may be that time will prove such an inference to be erroneous. It does not follow, however, that this is not a reasonable inference at this time by a qualified expert witness for the purpose of computing the present value of a proposed award for future loss of wages or future impairment of earning capacity in such a case.

Defendants in such a case are free to disagree and to call witnesses to present computations of present value based upon different assumptions of future wage increases and discount interest rates, including

what defendant refers to as "collateral consequences of inflation." It is true, as contended by defendant, that "economists differ on their predictions." It is also true, as contended by defendant, that the government is attempting to control inflation, as pointed out in *Frankel v. United States*, 321 F Supp 1331, 1346 (ED Pa 1970). The jury, however, is not bound to accept such contentions and may well conclude that considering the size of the present national debt, among other facts of common knowledge, it is far more likely that the federal government has no choice, as a practical matter, other than to permit continued inflation.

It has been recognized that the decisions which must be made every day by juries in personal injury cases in determining the amounts to be awarded for future losses of wages or for future impairments of earning capacity must necessarily border upon speculation. 2 Harper and James, The Law of Torts 1325, § 25.11 (1956), and *Scruggs v. Chesapeake and Ohio Railway Company, supra* at 1251. See also, *Conachan v. Williams*, 266 Or 45, 511 P2d 392 (1973), and authorities cited therein. Cf. *Goheen v. General Motors Corp.*, 263 Or 145, 502 P2d 223 (1972).

■ For these reasons we hold that it was not error, under the facts of this case, for the trial judge to permit plaintiff's expert witness to assume a future increase in wage rates for the purpose of computing the present value of a proposed award to plaintiff for future loss of wages and to offset that assumed future increase in wage rates against an assumed discount interest rate for the purposes of making such a computation.[5]

---

[5] It is of interest to note that in the recent publication by the Oregon State Bar as a part of its program for Continuing Legal

(Continued on page 680)

Other objections by defendant to the testimony of plaintiff's expert witness go primarily to the credibility and weight to be given to such testimony, rather than to its admissibility.

*Offer of exhibit showing computations: Refusal of instructions that award not subject to income taxes.*

■ For much the same reasons, we hold that the trial court did not err in receiving into evidence as an exhibit, for illustrative purposes, the computation of the witness setting forth the method by which he arrived at the present value of the proposed award for loss of future wages. Again, defendant was free to offer similar testimony and illustrative exhibits.

■ As a part of this same assignment of error defendant also complains of the failure of the trial court to instruct the jury that any such award was not subject to income taxes. The great majority of courts which have considered that question have held that it is not error to refuse such an instruction. We agree. See Annot., 63 ALR2d 1393, 1411 (1959). As stated in

---

(Continued from page 679)
Education, 1 Or St Bar CLE, Damages 12-8 to 12-9, § 12.7, it is stated that:

"In the author's experience, many cases are tried in Oregon where the issue of future loss of earning capacity is submitted to the jury, with no evidence, instructions to the jury, or argument about reduction to present worth.

"It may well be that the reason for the absence of cases on the subject of discounting future losses to present value in Oregon is the fact that the discount rate is usually offset or overcome by the rate of inflation or the declining value of money.

"There is little advantage, from a trial standpoint, of having the judge instruct on discounting future loss of earning capacity to present value, if he also instructs that the jury may take into account the declining value of money or rate of inflation. *Gist v. French*, [136 Cal App2d 247] 288 P2d 1002 (Cal 1955); *Dabareiner v. Weisflog*, [253 Wis 23] 33 NW2d 220 (Wis 1948)."

*Scruggs v. Chesapeake and Ohio Railway Company,*
*supra* at 1251:

> "\* · \* \* One difficulty about instructing the
> jury on the nontaxability of damage recoveries is
> that the interest paid in the future on the amount
> which is the present value of the pecuniary loss will
> be subject to tax. It would be difficult even for a
> certified public accountant to determine readily
> what the real tax difference would be, although
> some difference undoubtedly exists. Therefore, the
> court feels constrained to follow the more tra-
> ditional authority on this point."

4. *The court erred in admitting a computation of a
hypothetical loss of future wages for another brake-
man with comparable seniority.*

Defendant next assigns as error the admission
in evidence of a computation by plaintiff's same ex-
pert witness showing, on the same basis, the present
value of the future wages of another brakeman on the
same division of defendant's railroad who had a sen-
iority six months junior to plaintiff's.

It is contended by defendant that such a com-
putation for another employee, who apparently earned
$11,432 in 1970, compared with plaintiff's "annualized
earnings" for that year of $8,227, was completely ir-
relevant because no showing had first been made that
the material circumstances were "substantially sim-
ilar" to those in issue and that such computations
would mislead and confuse the jury.

This is similar to the problem recently con-
sidered by the court in *Conachan v. Williams,* 266 Or
45, 511 P2d 392 (1973)..

In that case we held (at p 59) that any evi-
dence which would "indicate fairly the *capacity* of

the plaintiff to earn money in his usual vocation" should be admitted. We also recognized (at p 61) that most courts now apparently hold that on the question of earning capacity it is proper to consider, under some circumstances, employment for which plaintiff was qualified at the time of his injury and the usual compensation paid for such employment.[⊛] We also held, however (at p 65), that although a trial judge has considerable latitude in the admission or rejection of such evidence, there should be a showing as a foundation for the admission of such evidence that circumstances are sufficiently similar so as to provide a proper basis for an informed decision by the trial judge whether such evidence has sufficient probative value so as to be properly admissible.

■ On application of these rules to this case I would hold that there was no abuse of discretion or error in permitting plaintiff's expert witness to prepare and present the computation in question. The majority of the court, however, is of the contrary opinion for reasons stated in the specially concurring opinion by HOLMAN, J.

As previously stated, however, the ultimate question to be decided in such a case is the extent to which an injured person's future earning *capacity* has been impaired. Plaintiff's actual earnings, although persuasive, are not conclusive and are no more than evidence to be considered in deciding this ultimate question. *Conachan v. Williams,* supra at 514.

In my view, a jury could reasonably infer that

---

[⊛] See cases cited in Conachan v. Williams, 266 Or 45, 511 P2d 392, 400 (1973). Defendant cites Pinkstaff v. Pennsylvania Railroad Company, 23 Ill App 2d 507, 163 NE2d 728, 740-41 (1959), *aff'd,* 20 Ill 2d 193, 170 NE2d 139 (1960), *cert denied,* 365 US 878, 81 S Ct 1029, 6 L ed 2d 191 (1961), as holding to the contrary.

although annual earnings of particular employees of
a railroad with the same job classification may vary,
employees with comparable seniority have the capacity,
through the exercise of their seniority rights, to make
comparable annual earnings, assuming that such em-
ployees are in good health.

It follows, in my opinion, that the trial judge
in this case did not err in holding, in effect, that com-
putations based upon annual earnings of another
brakeman in the same division of the same railroad,
and with substantially the same seniority date, had
sufficient probative value to be admissible over an
objection that such computations were "irrelevant and
improper to use the situation of some other worker
* * *."

Because of the manner in which such computa-
tions were used by plaintiff, for illustrative purposes, I
would also hold that the jury was not misled or con-
fused by the admission of such evidence. As previously
stated, however, the majority of the court has held to
the contrary.

5. *The trial court did not err in excluding defendant's
evidence that it would offer clerical employment to
plaintiff.*

Defendant assigns as error the exclusion of
what it refers to as "defendant's evidence rebutting
plaintiff's evidence that he was totally unemployable."

Plaintiff's witness who testified to that effect,
when asked to state the facts upon which he based
that opinion, said that:

"* * * The major company is Southern Pacific
Railroad; he is unable to work there; he is ob-

viously unable to work at all and some other employer wouldn't want to take the chance to have this man working for them and then having to take the liability of Southern Pacific Railroad damage to him. In other words, he is just not—I don't know what he could do."

To rebut that testimony defendant made an offer of proof of the testimony of "its agent in charge of the clerical force at [its] Eugene yard," to the effect that he could offer plaintiff clerical work within a short time; that he has two disabled trainmen working in his department and that he was authorized "to waive any physical requirement for hiring" and to offer plaintiff "the first available position." That offer of proof was rejected.

Defendant contends that the trial court erred in doing so because (1) it "was more than a mere offer of employment—it proved the existence and availability of work which a jury might conclude [plaintiff] can physically perform" and (2) it was admissible "as a matter of right" to rebut the "damaging insinuation" by plaintiff's witness that plaintiff was unemployable because defendant "constitutes or controls the job market" and "had no further use for plaintiff because he was injured and callously left to others the responsibility for his employment, which they are naturally unwilling to assume."

Although not directly in point on its facts, evidence of a similar offer of employment at the time of trial was rejected in *Zimmerman v. Montour Railroad Company,* 191 F Supp 433, 434 (WD Pa 1961), *aff'd,* 296 F2d 97 (1961), *cert denied,* 369 US 828, 82 S Ct 845, 7 L ed 2d 793 (1962), holding that:

"* * * the alleged proffered employment, in

my judgment, is without probative value in a fair appraisal of plaintiff's impairment of earning power."

See also *Bowman-Hicks Lumber Co. v. Robinson,* 16 F2d 240, 241 (9th Cir 1926), *cert denied,* 274 US 736, 47 S Ct 574, 71 L ed 1316 (1927). But see *Holland v. McRae Oil & Fertilizer Co.,* 134 Ga 678, 68 SE 555 (1910).

■ It may be true that the offered evidence had some relevance to the question whether, as a result of his injury, plaintiff was unemployable. When, however, the probative value of offered evidence is not great, any such probative value may be outweighed by considerations such as those of surprise, unfairness, confusion of the jury, and the prolonging of a trial. *Kelty v. Fisher et al,* 101 Or 110, 118, 199 P 188 (1921); McCormick on Evidence (2d ed 1972) 438-41, § 185.

■ In this case it appears that defendant had never, prior to trial, offered a job to plaintiff or even suggested that it might do so. To wait until the trial was well in progress to make such an offer of employment could well be considered by a trial judge as a circumstance involving considerations of such a nature. Accordingly, the trial court could properly hold that these considerations outweighed the probative value of such offered testimony so as to provide a proper basis for rejecting that offer unless defendant is correct in its remaining contention.

As to that contention, the problem is similar to the question whether a party has a "right" to offer what Wigmore refers to as "curative evidence" in response to inadmissible evidence which was received

without objection. In such cases, as stated in 1 Wigmore on Evidence (3d ed 1940) 309, § 15:

"* * * The matter is thus left in the hands of the trial Court. Modify this in certain cases by conceding to the opponent, as of right, to use the curative counter-evidence when a plain and unfair prejudice would otherwise have inured to him, and the rule will be sufficiently flexible."

We believe that this same rule is properly applicable to the problem presented in this case. Upon examining the record in this case, however, we are unable to find that any "plain and unfair prejudice would otherwise have inured" to defendant. As we read it, the primary thrust of the testimony of plaintiff's witness was not that plaintiff could not find employment because defendant had refused to offer a job to him, but that plaintiff was "obviously unable to work at all." While it is possible that a jury might have construed the testimony in the manner contended by defendant, that possibility did not, in our opinion, give rise to a showing that "plain and unfair prejudice would otherwise have inured" to defendant so as to require us to hold that the trial judge abused his discretion in rejecting the offer of proof by defendant.

As a part of this same assignment of error defendant complains of reference to this matter by plaintiff's counsel in his opening argument to the jury. Plaintiff does not respond to that contention and we can assume that on retrial of this case that argument will not be repeated.

6. *Other assignments of error.*

We have also considered defendant's other assignments of error, which relate primarily to objec-

tions to other statements by plaintiff's counsel in his argument to the jury, most of which were followed by motions for mistrial, and find no prejudicial error. This does not mean, of course, that this court approves of such arguments, much less that on retrial of this case, and after these matters have again been specifically called to the attention of plaintiff by the assignments of error in defendant's brief, plaintiff's counsel can necessarily expect the trial judge to again deny motions for mistrial in the event that these arguments are repeated.

For reasons previously stated, however, the judgment in this case must be set aside and the case remanded for a new trial.

HOLMAN, J., concurring in the result.

I disagree with that part of the opinion which holds that it was proper to admit in evidence a computation of future loss of wages based upon the earnings of another brakeman. The evidence relates to future *earning capacity*. The opinion assumes that because there is similar seniority, there is sufficient similarity between earning capacities to make what the other workman earned relevant. The error in that assumption is that plaintiff's demonstrated earning capacity is at variance with such an assumption. Without any showing why plaintiff earned less (i.e., temporary illness, injury, etc.), the jury is allowed to assume that in the future plaintiff will earn as much as the other workman. This is not a valid assumption in the face of proof of what they actually earned and in the absence of proof why plaintiff in the past has been earning less.

DENECKE, HOWELL, and BRYSON, JJ, join in this concurring opinion.